**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON ROMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 02-4763 |
| | : | |
| | : | |
| CITY OF READING and | : | |
| READING POLICE DEPARTMENT, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2004, upon

consideration of the Motion for Summary Judgment of Defendants City of Reading and Reading

Police Department, and any response thereto, it is hereby ORDERED that the Motion is

GRANTED and JUDGMENT is entered in favor of Defendants and against Plaintiff on all

remaining claims.

BY THE COURT:

_____

CYNTHIA M. RUFE, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON ROMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 02-CV-4763 |
| | : | |
| | : | |
| CITY OF READING and | : | |
| READING POLICE DEPARTMENT, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
CITY OF READING AND READING POLICE DEPARTMENT**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendants City of Reading and Reading Police Department ("Defendants"), by and through their attorneys, Montgomery, McCracken, Walker & Rhoads, LLP, hereby move this Honorable Court for the entry of summary judgment in their favor on all of Plaintiff's remaining claims.

Defendants incorporate the accompanying Memorandum of Law in support hereof as if set forth fully herein.

WHEREFORE, Defendants respectfully request that this Honorable Court grant their motion and enter judgment in their favor and against Plaintiff Jason Roman.

Respectfully submitted,

Dated: 2/23/04

/s/ Janelle E. Fulton (jef51)
David J. MacMain (PA Attorney ID 59320)
Janelle E. Fulton (PA Attorney ID 80027)
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215) 772-1500

Attorneys for Defendants
City of Reading and
Reading Police Department

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON ROMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 02-CV-4763 |
| | : | |
| | : | |
| CITY OF READING, and | : | |
| READING POLICE DEPARTMENT, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants City of Reading and Reading Police Department (collectively,

"Reading") submit the following brief in support of their Motion for Summary Judgment in this

§ 1983 federal civil rights claim.  As more fully set forth herein, summary judgment is required

in this case because Plaintiff has failed to put forth any evidence whatsoever to support his Equal

Protection and Right to Travel Claims.

**I.    INTRODUCTION**

Plaintiff Jason Roman initiated this § 1983 federal civil rights action as a *pro se*

litigant against Reading on July 17, 2002.  However, since November 4, 2003, Plaintiff has been

represented by W. Thomas Anthony, Esquire.[1]

As set forth more fully in Section III, below, aside from filing the Complaint and

a motion to vacate the Court's December 13, 2002 Order dismissing the Complaint and finally

---

[1] Mr. Anthony has still not yet entered his appearance of record in this matter.  However, he has represented to counsel for Reading that he represents Plaintiff in this matter and he defended Plaintiff at his deposition on December 3, 2003.  See correspondence from W. Thomas Anthony, Esquire to David J. MacMain dated November 4, 2003, a copy of which is attached hereto as Exhibit A.

appearing for his deposition on December 3, 2003 after rescheduling the deposition twice,

Plaintiff has taken absolutely no steps to develop his case against Reading. Specifically, in

violation of this Court's February 3, 2004 Order, Plaintiff has not provided his Rule 26(1)(1)

initial disclosures, he has not answered Reading's interrogatories and document requests, and he

has not provided signed HIPAA authorizations addressed to the Lehigh County Office of Mental

Health and Lehigh Valley Hospital and Health Network – Mental Health Clinic. See Order dated

February 3, 2004, a true and correct copy of which is attached hereto as Exhibit B. In addition,

he has taken no depositions in this case and he has not served any written discovery upon

Reading.

 For these reasons, and the reasons stated below, summary judgment is appropriate

on Plaintiff's remaining Equal Protection and Right to Travel Claims.

## II. SUMMARY OF UNDISPUTED MATERIAL FACTS

 The relevant material facts of this case are undisputed. Moreover, in order to

avoid any argument from Plaintiff that there are material disputed facts, thereby precluding

summary judgment, Reading will accept Plaintiff's version of the underlying facts, to the extent

they are relevant, as true for purposes of this motion only. Reading notes, however, that a

determination of some of the issues raised will, as a matter of law, turn on what facts and

information the Reading police officer who dealt with Plaintiff knew and reasonably believed at

the time of the incident in question, and as such, without any evidence to support his claims,

Plaintiff's *perception* of the facts will be, in large part, irrelevant.

 On June 14, 2002 at approximately 1:30 a.m., Plaintiff, a resident of Allentown,

Pennsylvania, was driving on Franklin Street between 8th and 9th Streets in Reading,

Pennsylvania looking for a woman whom he planned to offer a job as a dancer at his exotic

dance club when "a hail of bullets" struck his car.  Compl. ¶¶ 6, 11 (a true and correct copy of the Complaint is attached hereto as Exhibit C); Dep. tr., Roman at 62-69, 103 (a true and correct copy of Plaintiff's deposition transcript is attached hereto as Exhibit D).  Plaintiff did not see who fired the shots. Dep. tr., Roman at 72 (Exhibit D).  Upon hearing the gunshots, Plaintiff sped away and turned from Franklin Street onto Eleventh or Twelfth Street and took that street to Penn Street.  When he reached Fifth and Penn Streets, he saw five or six Reading police cars parked outside a store.  Id. at 69-70.  Plaintiff parked approximately 25 feet from the police cars, got out of the car to check it over for damage, and found a bullet hole in the side of the car.  Id. at 70, 98.  Plaintiff then walked into the clothing store and approached the police officers, who were in the middle of investigating a burglary at the store when Plaintiff arrived.  Id. at 74, 96. Plaintiff, who is a person of color, approached a white police officer, and told him that someone had shot at his car.  Id. at 75.  The officer instructed Plaintiff to go wait in his car and that the officers would be with him shortly. Id. at 70; Compl. ¶¶ 12, 37(a) (Exhibit C).

After waiting in his car for just 15 minutes, Plaintiff telephoned a friend in Allentown and asked her to call the Reading Police Department and tell them that his car had been shot at and that he wanted to speak to an officer.  Dep. tr., Roman at 70 (Exhibit D); Compl. ¶¶ 37(b), (d)-(e) (Exhibit C).  When he did not get an emergency response, Plaintiff then twice telephoned 911 in a span of ten minutes and requested police assistance, and the dispatcher told him that someone would be with him soon. Dep. tr., Roman at 71 (Exhibit D); Compl. ¶¶ 13, 37(c) (Exhibit C).

After they completed the burglary investigation, two police officers walked over to Plaintiff and listened as he explained the shooting incident. Dep. tr., Roman at 99 (Exhibit D). Plaintiff had waited in his car for a total 45 minutes. Id. at 101.  Plaintiff told the officers that he

did not see who fired the gun.  Id. at 104. The officers looked briefly at Plaintiff's car, but took

no evidence from it. Compl. ¶ 16 (Exhibit C).  After spending approximately fifteen minutes

with Plaintiff, Officer Malcolm Eddinger completed an incident report, and the encounter

concluded with the officers giving Plaintiff a business card with the incident number. Dep. tr.,

Roman at 99-100 (Exhibit D); Compl. ¶ 16 (Exhibit C); Reading Police Department Crime

Investigation Report dated June 14, 2002, a true and correct copy of which is attached hereto as

Exhibit E.

Plaintiff testified that the officers did not mistreat him, stating, "[t]hey were

friendly.  Don't get me wrong.  They were not hostile.  They were not disrespectful to the degree

that they talked badly to me other than they talked to me in an insulting fashion." Dep. tr.,

Roman at 102-03 (Exhibit D).  However, Plaintiff claims that he was humiliated because he felt

that the officers made light of the incident by stating that he was lucky he was not shot.[2]  In fact,

he testified that he filed the present lawsuit because "[n]o one ever asked [him] if [he] was okay,

if [he] needed a doctor." Id. at 93.  He further testified that he would not have "felt so badly" if

one of the officers had asked him, "hey, are you okay, buddy[?]  Are you sure[?]" Id. at 116.

This incident has not limited Roman's ability to travel to the City of Reading.

Roman testified that, prior to this incident, he had been to Reading 40 to 50 times, and he has

been to Reading approximately 30 to 40 times since this incident.  Id. at 60, 122.

## III.    PROCEDURAL HISTORY

This case has the following, rather extensive procedural history.  On July 17,

2002, Plaintiff filed a Complaint (see Exhibit C), claiming that Reading failed to: (1) "warn the

_____

[2]   Notably, Plaintiff agreed with the officer, stating "By all accounts, really the officer was right.
I should have been dead."  Dep. tr., Roman at 78 (Exhibit D).

public" by installing signs that the neighborhood in the City of Reading was a "high crime" area, Compl. ¶¶ 22-23; (2) prevent the high crime areas by failing "to remove trees" and "install brighter street lights," id. at ¶ 25; (3) ensure "the safety of citizens and visitors to the city" in violation of Plaintiff's constitutional right to travel, id. at ¶¶ 27, 31; and (4) investigate the crime committed against Plaintiff.  Id. at ¶ 30.  Plaintiff further alleged that the officers' failure to investigate the incident demonstrates that Reading has a "policy of racial inequality."  Id. at ¶ 37.

On September 18, 2002, Reading filed a Motion to Dismiss Plaintiff's Complaint. Plaintiff filed a Motion for Extension of Time in which to respond to Reading's Motion to Dismiss.  Reading did not contest Plaintiff's motion, and, by Order dated November 7, 2002, the Court granted the motion and extended the time for Plaintiff to respond to the motion until December 6, 2002.  However, Plaintiff failed to file a response by December 6, 2002, and the Court granted Reading's Motion to Dismiss as uncontested and dismissed the Complaint without prejudice. In the Order, the Court granted leave for Plaintiff to file an Amended Complaint within twenty days, but Plaintiff failed to do so.  Over 30 days later, Plaintiff filed an opposition to Reading's Motion to Dismiss, followed soon after by an addendum thereto.  Reading moved to strike Plaintiff's opposition and addendum, and on February 13, 2003 the Court granted the motion because Plaintiff's opposition was moot.

On April 3, 2003, the Court granted Plaintiff's unopposed Motion to Vacate the Court's prior Orders and reinstated the Complaint, Reading's Motion to Dismiss, and Plaintiff's filings in opposition, because Plaintiff claimed that he had never received the Court's prior Orders setting deadlines for filing his opposition or amended complaint.

By Memorandum and Order dated April 22, 2003, the Court grant Reading's Motion to Dismiss Plaintiff's claims arising out of the Due Process Clause of the U.S.

Constitution.  See Roman v. City of Reading, 257 F. Supp. 2d 799 (Rufe, J., April 22, 2003).

The Court, however, did not dismiss Plaintiff's Equal Protection Claim and Right to Travel

Claims on the basis that Plaintiff *might be* able to develop facts in discovery to support these two

claims.  See id. (emphasis added)

Pursuant to this Court's January 21, 2004 Order, fact discovery in this matter was

completed on February 13, 2004, and Reading submits the following Memorandum of Law in

support of its Motion for Summary Judgment.

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that:

> Summary judgment shall be entered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact, and that the moving party is entitled
> to judgment as a result of law.

Fed. R. Civ. P. 56(c).

A fact is material when it effects the outcome of the suit under governing law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A genuine

issue of material fact exists when the evidence requires a fact finder to resolve the parties'

differing versions of the truth at trial.  Id. at 249, 106 S. Ct. at 2510.  Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact."  Id. at 247-48, 106 S. Ct. at 2509-10 (emphasis in original).

The standard for ruling on a motion for summary judgment as articulated by the

Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) is as follows:

> the plain language of Rule 56(c) **mandates the entry of summary
> judgment**, after adequate time for discovery and upon motion,

**against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial**.

477 U.S. at 322, 106 S. Ct. at 2552 (emphasis supplied).  "[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of her claim."  Hernandez v. Borough of Palisades Park Police Dep't, 2003 U.S. App. LEXIS 1638 *1, *6-*7 (3d Cir. January 29, 2003) (citing Celotex, 477 U.S. at 323-25).  The plaintiff "need not try her case by carrying the burden of persuasion, but she must, at a minimum, produce evidence on every element of her claim."  Thus, the burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325, 106 S. Ct. at 2554.  Although all evidence must be viewed in a light most favorable to the non-moving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970), "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2509-10 (quoting Fed. R. Civ. P. 56(e)).

There is no issue for trial unless there is "sufficient evidence favoring the non-moving party" such as would allow a jury to return a verdict in favor of that party.  Id. at 249, 106 S. Ct. at 2510.  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Id. at 249-50, 106 S. Ct. at 2510-11.  Moreover, "factual disputes that are irrelevant or unnecessary will not be counted."  Id., 106 S. Ct. at 2510-11.

In light of Celotex and Anderson, and Hernandez, Plaintiff may not rest upon the mere allegations set forth in his Complaint, but rather must come forward with competent

evidence in the form of affidavits, authenticated documents, sworn statements, or other such verified evidence to establish that there is a genuine issue of <u>material</u> fact remaining for trial.

Here, **Plaintiff has conducted no discovery whatsoever** – he has not taken one deposition, of the officers involved, of any Reading official, or of any other witnesses, and he has not served any written discovery on Reading -- nor has he provided the initial disclosures required by Federal Rule of Civil Procedure 26(a) or responded to Reading's interrogatories and document requests.  By failing to participate in discovery, Plaintiff has not only failed to proffer the facts necessary to support his claims, but he has also severely limited Reading's ability to investigate his claims.  Since such facts have not been developed, Plaintiff is unable to meet this burden, there is no "colorable" claim or "probative" evidence to establish that Reading should in any way be held liable for the claims asserted, and therefore, Reading is entitled to summary judgment.

## V.    <u>ARGUMENT</u>

### A.    <u>Plaintiff Has Failed to State a Claim against Reading Under Section 1983</u>

Municipal defendants, such as the City of Reading and the Reading Police Department, cannot be responsible for the alleged deprivation of rights protected by the United States Constitution, unless official policy is responsible for the deprivation and the policymakers acted with deliberate indifference.  <u>Monell v. Department of Social Servs. of the City of New York</u>, 436 U.S. 658, 690-95, 98 S. Ct. 2018, 2035-38 (1978).  Recovery under § 1983 cannot be premised upon a theory of *respondeat superior*.  <u>Id.</u> at 691, 98 S. Ct. at 2035-38.

Thus, in order to attribute liability to Reading under § 1983, Plaintiff must plead and prove: (1) an underlying constitutional violation; (2) the identity of the officials or governmental bodies with final policymaking authority; and (3) proof that those individuals

"have, through their decisions, 'caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" Simmons v. City of Phila., 947 F.2d 1042, 1062 (3d Cir. 1991) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)). The policy must be the "moving force" behind the constitutional tort. Monell, 436 U.S. at 691, 94; Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994). Plaintiff must also plead and prove that the policymakers acted with "deliberate indifference to the rights of persons with whom the police came into contact." Simmons v. City of Phila., 947 F.2d at 1060-61.

   1.    **Plaintiff Has Failed to Prove an Underlying Constitutional Violation**

   As discussed more fully below, Plaintiff has presented no evidence whatsoever to show that any Reading police officer violated his constitutional rights. Accordingly, Plaintiff's claims against Reading also must fail. Namely, if Plaintiff's rights were not violated, the alleged policy, practice or custom of Reading – good or bad – is irrelevant, and judgment must be entered in favor of Reading. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (finding that, if the officer "inflicted no constitutional injury on [the decedent] it is inconceivable that [the city] could be liable to plaintiff"); Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990) (stating that, since there was no constitutional violation, the issue of inadequate training is irrelevant); Reynolds v. Little Rock, 893 F.2d 1004, 1007 (8th Cir. 1990) (finding that force was not excessive "rendered academic city's policy regarding use of force").

   Since Plaintiff has failed to present any facts that would support a finding that a Reading police officer violated his civil rights, the derivative claims against Reading fail and should be dismissed.

**2.    Plaintiff Failed to Prove Official Policy or Custom Encouraging or Permitting the Denial of Equal Protection**

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XVI § 1.  A "State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."  DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200 n.5 (1989) (citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064 (1896)).

In order to survive summary judgment on his Equal Protection claim, Plaintiff must "proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to black men than to non-black men, that race was a motivating factor, and that Plaintiff was injured by the policy or custom."  Roman, 257 F. Supp. 2d at 803 n.8 (citing Hynson v. City of Chester, 864 F.2d 1026, 1031 (3d Cir. 1988)); see Estate of Smith v. Marasco, 227 F. Supp. 2d 322, 358 (E.D. Pa. 2002), rev'd on other grounds, 318 F.3d 497 (3d Cir. 2003) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. ... They must demonstrate that they received different treatment from that received by other individuals similarly situated.") (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)). "'[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427 (1985); see also Colburn v. Upper Darby Township, 838 F.2d 663, 672 (3d Cir. 1988) cert. denied, 489 U.S. 1065, 109 S. Ct. 1338 (1989)

(holding allegations of three similar incidents enough to sustain a claim where a single incident presumably would not be).

Thus, even if the Court finds an underlying constitutional violation, which Reading denies, Plaintiff has presented absolutely no evidence that would allow a jury to infer that Reading had an official policy or custom encouraging or permitting its police officers to provide less protection to black men than to non-black men, that race was a motivating factor, and that Plaintiff was injured by the policy or custom.

    a.    Plaintiff Failed to Present Any Evidence of a Reading Policy or Custom of Racial Inequality

An "official policy" is one in which "a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1299-1300 (1986). The inclusion of "custom" along with "policy" recognizes that the practices of government officials can, "although not authorized by written law[,] . . . be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691, 98 S. Ct. at 2036-36. Additionally, failure to properly train police officers can create a custom or policy for purposes of § 1983 liability, if such failure is tantamount "to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204-05 (1979).

Here, Plaintiff has provided absolutely no factual evidence to support his claim that Reading has adopted a policy or custom of discrimination against African-Americans. First, Plaintiff has alleged no facts suggesting that Officer Eddinger's training constituted a "deliberate" decision by a Reading official with final policy-making authority over the police department. Second, plaintiff has not presented any facts suggesting that any Reading official

has adopted, authorized, or acquiesced in the use of such a training instruction. Finally, Plaintiff

has not claimed that the allegedly faulty training constitutes "deliberate indifference" to the

rights of its citizens. In fact, Plaintiff has conducted no discovery whatsoever, nor has he

provided the initial disclosures required by Federal Rule of Civil Procedure 26(a) or responded to

Reading's interrogatories and document requests.  By failing to participate in discovery, Plaintiff

has not only failed to develop the facts necessary to support his claims, but he has also severely

limited Reading's ability to investigate the allegations.

        b.      Plaintiff Failed to Present Any Evidence That Race Was a
                    Motivating Factor in Reading's Handling of the Incident

        Plaintiff has presented no evidence whatsoever that Reading's apparent decision

not to investigate the incident was motivated by racial animus, or that the police officers treated

Plaintiff differently based upon his membership in an identifiable class.[3]  On the contrary,

Officer Malcolm Eddinger, the Reading police officer who responded to Plaintiff's complaint

and took Plaintiff's statement, specifically denies that he treated Plaintiff any differently than he

would have treated any other victim under the same circumstances, regardless of age, race,

ethnicity, citizenry, or gender.  Affidavit of Malcolm F. Eddinger at ¶ 13, which is attached

hereto as Exhibit F.  Officer Eddinger further denies that Plaintiff's age, race, ethnicity, citizenry,

---

[3]  Plaintiff also alleges that the Reading police failed to investigate the shooting of his car
because the officers assumed that he was a "pimp" or drug dealer. However, Plaintiff does not
believe that this alleged assumption was based on his race or ethnicity.  Rather, Plaintiff
explained at his deposition that he believes the officers thought he was a "pimp" or drug dealer
because of the type of car he was driving, stating:

> most police officers if you look at the car you will think, oh, drug dealer.
> Oh, pimp.  Because the way the car is situated, dark windows, black, fancy
> wheels, but I wished they would have talked to me and found out.  And I
> told him, I said, listen, I have a strip club down in Allentown.  I was here
> to pick up a would be dancer.

Dep. tr., Roman at 103.

or gender in any way effected the way he handled Plaintiff's complaint. Id. at ¶ 14. Rather, it was probably the lack of evidence pertaining to the shooting that influenced Reading's determination of whether further investigation was appropriate.

Once Officer Eddinger completed his shift, he submitted the report to the Reading Police Department Criminal Investigation Division ("CID") as required by Reading Police Department policy. Id. at ¶ 12. Once an incident report is submitted to CID, it is up to that division to determine whether sufficient evidence exists to further investigate a reported crime. Id. While Officer Eddinger did not make the decision to conduct no further investigation into the shooting of Plaintiff's car, he notes that, given the facts that (1) Plaintiff did not see who fired the shots that hit his car, (2) Officer Eddinger did not see any physical evidence that could be removed from the vehicle when he took the report, and (3) there was no gun with which to compare the bullets even if he had known they were in the car, there was no useful information or evidence for further investigation.

Plaintiff's allegations that Reading failed to investigate the shooting incident because Plaintiff is a person of color have no evidentiary support in the record, and "this case standing alone does not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983." Groman, 47 F.3d at 637.

> c.  Plaintiff Failed to Present Any Evidence That He Was
> Injured by the Alleged Policy or Custom

Even if the Court finds that Plaintiff has satisfied the first two prongs of this test, Plaintiff has presented no evidence, nor can he, that he was injured as a result of an alleged policy of racial discrimination. First, if Plaintiff was injured, it was by the person(s) who fired bullets in his direction, and not by the Reading Police Department:

> Q:    Did you sustain any injuries as a result of your encounter with the Reading Police Department?
>
> A:    Just my nerves just were so shattered.  I developed paranoia.  You don't know how much paranoia.  I went up to Doctor -- Doctor Daley and we talked about this and we talked about it.  And I said, doctor, I said, just aggravation, frustration, you know.  Were there physical injuries?  No.  Mental?  Yes.
>
> Q:    And were those mental injuries caused by the police officers or by the shooting?
>
> A:    Both.  There is so much frustration, honestly. Just frustration, anger, anger, anger, anger.  You got to just try to imagine, you're within one one-thousands of an inch from not ever being there, not ever seeing my little girls ever again and for what.
>
> Q:    I understand. And that was not caused by the police, right?
>
> A:    No.  I never alleged that.

Dep. tr., Roman at 111-12.

Second, Plaintiff's most serious alleged injury as a result of his encounter with the Reading police was hurt feelings:

> Q:    What injuries did the police cause to you?
>
> A:    Mental anguish.  Just totally not treating me well.  Not treating me good.

Dep. tr., Roman at 111-12.

Finally, Plaintiff, who has was receiving counseling for anxiety and other mental health issues prior to this incident, did not require any different or additional treatment to address any alleged injuries sustained as a result of this incident.  In fact, by Plaintiff's own account, his psychiatrist, Dr. Daley, tried to reason with Plaintiff and help him to understand that the officers' handling of the matter was not, as he perceived, a personal attack on Plaintiff:

> Q:    Did you receive any treatment?
>
>                    ***

     A:     Counseling.  I went to get counseling from Doctor Daley.

     Q:     Was Doctor Daley's counseling after this incident different from his counseling to you before this incident?

     A:     Oh, yeah.  He tried to steer me in a way from harboring bad thoughts.  He said, well, you know, he didn't -- he didn't say, oh, bad, bad police officer.  No, he didn't do that.  He said, maybe they were -- you know, just bogged down with what they were doing.  He offered me different options.

     Q:     And what do you think of those options?

     A:     They could be justified.  I don't know.

<u>Id.</u>

It is clear that Plaintiff's claim against Reading is unsubstantiated.  Because the record will not support a reasonable jury finding of a Reading policy or custom of racial discrimination, especially one that rises to the level of deliberate indifference required for § 1983 liability, summary judgment should be entered in favor of Reading on Plaintiff's Equal Protection claim.

### 3.    Plaintiff Failed to Prove an Official Policy or Custom Violating the Right to Intrastate Travel

The right of individuals to "travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement" has long been recognized by the U.S. Supreme Court.  <u>Shapiro v. Thompson</u>, 394 U.S. 618, 629 (1969).  Although the right to travel is not explicitly mentioned anywhere in the Constitution, <u>id.</u> at 630, its source has been located by courts over the years in various constitutional provisions.   <u>See</u> <u>Zobel v. Williams</u>, 457 U.S. 55, 60 n.6 (1982) ("In reality, right to travel analysis refers to little more than a particular application of equal protection analysis.");  <u>Id.</u> at 64 (O'Connor, J., concurring) (suggesting that the foundation for "right to travel" claims

lies in the Privileges and Immunities Clause of Article IV); <u>Edwards v. California</u>, 314 U.S. 160

(1941) (assessing the constitutionality of a California statute barring the transportation of

indigents into the state in light of the Commerce Clause).

   The fact that the Supreme Court has defined the right to travel quite specifically

as the right to travel *interstate* raises the question of whether the right to travel locally or within a

state is entitled to the same recognition as the right to migrate between states, and the circuits are

divided on this issue.  <u>Roman</u>, 257 F. Supp. 2d at 803-04 (citing <u>Hutchins v. District of

Columbia</u>, 188 F.3d 531, 537-38 (D.C. Cir. 1999).

   In <u>Lutz v. City of York</u>, 899 F.2d 255, 268 (3d Cir. 1990), the Third Circuit

recognized a constitutional right to intrastate travel as a fundamental constitutional right deriving

from the Due Process Clause of the 14th Amendment and held that state restrictions on the right

to intrastate travel are subject to intermediate scrutiny.  <u>Id.</u> at 270.  However, there has been no

reported case in the Third Circuit or any other circuit involving a right to travel claim predicated,

as Plaintiff's is, not upon an affirmative governmental restriction but upon a failure to protect

Plaintiff from the random violence of private citizens.  <u>Cf.</u> <u>Lutz</u>, 899 F.2d at 268 (challenging a

municipal statute prohibiting "cruising" (i.e., driving repeatedly around a loop of roads in the

heart of the city)); <u>Callaway v. Samson</u>, 193 F. Supp.2d 783, 788-789 (D.N.J. 2002) (invalidating

a statutory requirement that candidates for election to local office have lived in the ward or

district in which they seek election for one year prior to their candidacy); <u>Salem Blue Collar

Workers Assn. v. City of Salem</u>, 832 F. Supp. 852, 865 (D.N.J. 1993) (upholding an ordinance

requiring public employees in the City of Salem, New Jersey, to reside within city limits); <u>Smith

v. Lower Merion Township</u>, 1991 U.S. Dist. LEXIS 11100 (E.D. Pa. 1991) (upholding the

township's zoning ordinance restricting the ability of landlords to rent residential properties to college students).

Here, Plaintiff alleges that the City of Reading and its police officers "placed unreasonable and burdensome restrictions on [his] freedom to travel" by failing to protect him as a visitor to Reading.  Compl. ¶ 31 (Exhibit C).  In light of the fact that no court has recognized state *in*action as the basis for a right-to-travel violation, and since this Court has already held that "'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause,'" Roman, 257 F. Supp. 2d at 802 (citing DeShaney, 489 U.S. at 197), Plaintiff's Right to Intrastate Travel claim should be dismissed.

However, if the Court finds that Plaintiff's allegation of state inaction is sufficient as a threshold matter, then the Court must decide whether the inaction he alleges actually implicated his right to travel.  Evaluation of the merits of Plaintiff's claim that his right to travel was violated through government *in*action rather than through affirmative government action would require a wholesale adaptation of the right-to-travel analysis, which has developed to test the constitutionality of state laws impacting travel.

In Attorney General of New York v. Soto-Lopez, 476 U.S. 898 (1986), the Supreme Court, citing Shapiro, articulated three criteria for determining whether state *action* implicates the right to travel: (1) when it actually deters travel, (2) when impeding travel is its primary objective, or (3) when it uses any classification which serves to penalize the exercise of the right to travel. Soto-Lopez, 476 U.S. at 905.  Reading's alleged conduct does not fulfill any of these criteria.

Plaintiff has not claimed that he has actually been deterred from visiting Reading as a result of police inaction on the evening of June 14, 2002.  On the contrary, Plaintiff testified

that he has been to Reading 30 to 40 times since the incident.  Dep. tr., Roman at 122.

Moreover, even if he had been deterred, it likely would have been because of the random

violence of private citizens hitting his car with a "hail of bullets" rather than what Plaintiff

perceived as insensitivity on the part of the police.

Similarly, Plaintiff has not claimed that the police acted (or failed to act) with the

intent to prevent him from exercising his right to visit Reading, and he has not claimed that the

police acted (or failed to act) to punish him for having exercised his right to visit Reading.

Moreover, Officer Eddinger specifically denies that he discriminated against Plaintiff or treated

him differently because he was a visitor to Reading.  Affidavit of Malcolm F. Eddinger at ¶¶ 13-

15 (Exhibit F).  Likewise, Plaintiff has not alleged discrimination on the basis of his status as an

intrastate traveler.  He claims that he was not protected *as* a visitor, but he does not allege that he

was not protected *because* he was a visitor.

Even if this Court were to recognize that a plaintiff could be negligently deprived

by the government of his right to intrastate travel, Plaintiff has neither pleaded nor developed

facts sufficient under <u>Soto-Lopez</u> to support a claim that his right to travel was violated by the

conduct of the police on June 14, 2002, and summary judgment should be granted in favor of

Reading.

**B.**     **<u>The Reading Police Department Is Entitled to Summary Judgment</u>**

"[P]olice departments cannot be sued alongside municipalities because a police

department is merely an administrative arm of the municipality itself."  <u>Hernandez v. Borough of</u>

<u>Palisades Park Police Dep't</u>, 2003 U.S. App. LEXIS 1638 *1, *6 (3d Cir. January 29, 2003)

(citing <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997); <u>Colburn v.</u>

<u>Upper Darby Township</u>, 838 F.2d 663, 671 n.7 (3d Cir. 1988); <u>see Gaines v. University of</u>

Pennsylvania Police Dep't, 1997 U.S. Dist. LEXIS 15460, *1, *8 (E.D. Pa. Oct. 7, 1997) ("This Court and other courts have which have considered § 1983 claims against municipal police departments have recognized, as a matter of law, that police departments are purely instrumentalities of the municipality with no separate identity; thus, they are not "persons" for purposes of § 1983 and not capable of being sued under § 1983").  Therefore, summary judgment should be granted as to the Reading Police Department.

### III.    CONCLUSION

For all of the foregoing reasons, Reading respectfully requests that summary judgment be entered in favor of Reading and that all of Plaintiff's remaining claims be dismissed with prejudice.

Respectfully submitted,

Dated: 2/23/04                           /s/ Janelle E. Fulton (jef51)
                                         David J. MacMain (PA Attorney ID 59320)
                                         Janelle E. Fulton (PA Attorney ID 80027)
                                         MONTGOMERY, MCCRACKEN,
                                           WALKER & RHOADS, LLP
                                         123 S. Broad Street
                                         Philadelphia, PA  19109
                                         (215) 772-1500

                                         Attorneys for Defendants
                                         City of Reading and
                                         Reading Police Department

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2004, I served a true and correct

copy of the foregoing Motion for Summary Judgment, supporting Memorandum of Law, and

Proposed Order upon the following by pre-paid Federal Express Overnight Delivery:

> W. Thomas Anthony, Esquire
> 451 Main Street
> Bethlehem, PA  18018
> *Attorney for Plaintiff*

> Courtesy copy[1] to:

> Plaintiff Jason Roman
> 911 Barnsdale Road
> Allentown, PA  18103

/s/ Janelle E. Fulton (jef51)
Janelle E. Fulton

---

[1] Although Plaintiff is now represented by counsel as noted within this Motion, a courtesy copy of this Motion is being served upon Plaintiff, who initiated the action *pro se*, in an abundance of caution, so that there is no dispute that Plaintiff and/or his counsel were served with the present Motion.

1008855v1