# EXHIBIT A



**W. THOMAS ANTHONY, JR.**
ATTORNEY AT LAW
451 MAIN STREET
BETHLEHEM, PENNSYLVANIA 18018
(610) 691-7633
FAX: (610) 866-4626

November 4, 2003

David J. MacMain, Esquire
Danielle M. White, Esquire
Montgomery. McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Re:    Jason Roman vs. City of Reading, et al.

Dear Mr. MacMain and Ms. White:

Please be advised that I have been contacted by Jason Roman to represent him in his action against the City of Reading, which is now pending in the U. S. District Court for the Eastern District of Pennsylvania.

Late yesterday afternoon in connection with this case, Mr. Roman showed me the notice of deposition which you had sent to him. We both discovered that the deposition was scheduled for yesterday morning. He had told me previously that the deposition was scheduled for a later date. We apologize sincerely for this error, and we would like to reschedule the deposition at your convenience.

Since I am out of my office quite often, it is sometimes easier to reach me by my pager. That number is (610) 798-8661. Just enter your phone number after you hear the beeps; there is no voice message. I will await to hear from you in this regard.

Very truly yours,

W. Thomas Anthony, Jr., Esquire

cc:    Jason Roman

# EXHIBIT B

CMR

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

23

JASON ROMAN,         :
   **Plaintiff**       :
                   :
      v.           :      **CIVIL ACTION**
                   :      NO.  02-4763
CITY OF READING, ET AL.,  :
   **Defendants**     :
                   :

# FILED

FEB - 3 2004

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## O R D E R

**AND NOW**, this 3rd day of February, 2004, upon consideration of Defendants' Motion

to Compel [Doc. # 20], and in the absence of any timely response thereto, see Local R. Civ. P.

7.1(c),[1] it is hereby **ORDERED** that Defendants' Motion is **GRANTED** as uncontested. Upon

consideration of the grounds set forth in Defendants' Motion, it is specifically **ORDERED** that:

1. Plaintiff must provide to Defendants before the close of discovery his Rule 26(a)(1)

initial disclosures including, inter alia, the names and addresses of witnesses (if any) and exhibits

(if any);

2. Plaintiff must provide to Defendants before the close of discovery full and complete

answers to Defendants' First Set of Interrogatories Directed to Plaintiff;

3. Plaintiff must provide to Defendants before the close of discovery full and complete

answers to Defendants' First Request for Production of Documents and Things Directed to

---

[1] Defendants filed the instant Motion to Compel on January 15, 2004. Although the certificate of service fails to state the method of service, the Court assumes it was served by first-class mail. Accordingly, under Federal Rule of Civil Procedure 6(e) and Local Rule 7.1(c), Plaintiff's response was due within seventeen days, i.e., on or before February 2, 2004. No response was filed as of today. Therefore, the motion is granted as uncontested.

    Discovery in this case closes on February 13, 2004 and dispositive motions are due on or before February 23, 2004. Accordingly, in order to ensure that discovery disputes do not interfere with any deadlines in this case, the Court must address pending discovery motions in a timely manner. Although Plaintiff filed this action pro se, Defendants informed the Court that he is now represented by counsel. Accordingly, the Court expects counsel for Plaintiff to comply strictly with all relevant deadlines.

Plaintiff and produce all documents and things requested therein;

  4. Plaintiff must provide to Defendants before the close of discovery a signed HIPAA Authorization addressed to: (a) the Lehigh County Office of Mental Health and (b) Lehigh Valley Hospital and Health Network - Mental Health Clinic.

  It is so **ORDERED**.

     **BY THE COURT:**

     **CYNTHIA M. RUFE, J.**

...RECEIVED BY FAX ONLY

**ENTERED**

FEB - 4 2004

**CLERK OF COURT**

# EXHIBIT C

## SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| JASON ROMAN<br><br>v.<br><br>CITY OF READING and READING POLICE DEPARTMENT | CIVIL ACTION NO. 02-4763<br><br>TO: (NAME AND ADDRESS OF<br>    DEFENDANT)<br><br><br>    CITY OF READING<br>    815 Washington Street<br>    Reading, PA |

### YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)

   Jason Roman
   2327 Hanover Avenue
   Allentown, PA 18109

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| Michael E. Kunz, Clerk of Court | Date: 7/18/02 |
|---|---|
| (By) Deputy Clerk<br><br>Evelyn Renner | |

### United States District Court
Eastern District Of Pennsylvania
United States Courthouse
Independence Mall West
601 Market Street
Philadelphia, PA 19106-1797

*Chambers of*
*James T. Giles*
*Chief Judge*

*Michael E. Kunz*
*Clerk of Court*

*Clerk's Office*
*Room 2609*
*Telephone*
*(215)597-7704*

### NOTICE OF RIGHT TO CONSENT TO EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

The district judges of this Court have found that the United States magistrate judges are experienced judicial officers who have regularly handled the disposition of hundreds of civil cases through motions and trials and are fully qualified to try any civil cases arising before this Court.

In accordance with the provisions of 28 U.S.C. §636(c), you are hereby notified that pursuant to Local Rules 72.1(h), the United States magistrate judges of this district, in addition to their other duties, may, upon the consent of all the parties in a civil case, conduct any or all proceedings in a civil case, including a jury or non-jury trial, and order the entry of a final judgement. Appropriate consent forms for this purpose are available from the clerk of court.

Your decision to consent, or not to consent, to the referral of your case to a United States magistrate judge for disposition is entirely voluntary and should be communicated solely to the clerk of the district court. Only if all the parties in the case consent to the reference to a magistrate judge will either the judge or magistrate judge be informed of your decision. **If you decide to consent, your case will receive a date certain for trial.**

No action eligible for arbitration will be referred by consent of the parties until the arbitration has been concluded and trail *de novo* demanded pursuant to Local Rules 53.2 , Paragraph 7. The Court may, for good cause shown, or on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge.

When a case is referred to a magistrate judge for all further proceedings, including the entry of final judgement, the final judgement shall be appealed directly to the Court of Appeals for the Third Circuit in the same manner as an appeal from any other judgement of a district court.

Nothing herein shall be construed to be a limitation of any party's right to seek review by the Supreme Court of the United States.

JAMES T. GILES
CHIEF JUDGE

MICHAEL E. KUNZ
CLERK OF COURT

Civ. 635(2/00)

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JASON ROMAN

## DEFENDANTS

CITY OF READING

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   LEHIGH
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   BERKS
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

PRO SE
2327 Hanover Ave.
Allentown, PA 18109

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☑ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. §1983   Civil rights case regarding police treatment of victim of shooting.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ 10,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   7/18/02

SIGNATURE OF ATTORNEY OF RECORD   X _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Jason Roman                                    CIVIL ACTION

                    v.

City of Reading, et al.

                                               NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel
for plaintiff shall complete a case Management Track Designation Form in all civil cases at
the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan
set forth on the reverse side of this form.) In the event that a defendant does not agree with
the plaintiff regarding said designation, that defendant shall, with its first appearance, submit
to the clerk of court and serve on the plaintiff and all other parties, a case management
track designation form specifying the track to which that defendant believes the case should
be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

    (a)    Habeas Corpus — Cases brought under 28 U.S.C.
           §2241 through §2255.                                    ( )

    (b)    Social Security — Cases requesting review of a
           decision of the Secretary of Health and Human
           Services denying plaintiff Social Security Benefits.    ( )

    (c)    Arbitration — Cases required to be designated for
           arbitration under Local Civil Rule 53.2.               ( )

    (d)    Asbestos — Cases involving claims for personal
           injury or property damage from exposure to
           asbestos.                                              ( )

    (e)    Special Management -- Cases that do not fall into
           tracks (a) through (d) that are commonly referred
           to as complex and that need special or intense
           management by the court. (See reverse side of
           this form for a detailed explanation of special
           management cases.)                                     ( )

    (f)    Standard Management — Cases that do not fall into
           any one of the other tracks.                           (✓)

7/18/02                                    _____
Date                                       Attorney-at-law

                                           PRO SE
                                           _____
                                           Attorney for   plaintiff

(Cv. 660) 7/95

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _2327 Hanover Ave. Allentown, PA 18109_

Address of Defendant: _815 Washington St. Reading, PA_

Place of Accident, Incident or Transaction: _Reading, PA_
(Use Reverse Side For Additional Space)

Does this case involve multidistrict litigation possibilities?                    Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _JASON ROMAN_ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _7/18/02_      X _____      _pro se_
                      Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _7/18/02_      X _____      _pro se_
                      Attorney-at-Law                Attorney I.D.#

CIV. 609 (9/99)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON ROMAN,            )
        Plaintiff         )    No.
                     )
vs.                  )    02-CW-4763
                     )
CITY OF READING, and      )
READING POLICE DEPARTMENT,   )
        Defendants     )    JURY TRIAL DEMANDED

### COMPLAINT

FILED JUL 1 8 2002

The Plaintiff, JASON ROMAN, respectfully represents that:

### Parties

1.     The Plaintiff is an adult individual whose mailing address is 2327 Hanover Avenue, Allentown, Lehigh County, Pennsylvania.

2.     The Defendant, CITY OF READING, is a municipal corporation whose offices are located at 815 Washington Street, Reading, Berks County, Pennsylvania.

3.     The Defendant, READING POLICE DEPARTMENT, is a division of a municipal government, whose offices are located at 815 Washington Street, Reading, Berks County, Pennsylvania.

### Jurisdiction

4.     Jurisdiction exists in the Federal Courts under 42 U.S.C. §1983, in that the Plaintiff alleges that persons acting under color of state law have denied him the civil rights and liberties guaranteed to him under the Fourteenth Amendment to the United States Constitution.

5.     This Court has jurisdiction because the matters complained about arose out of the City of Reading and the County of Berks, Pennsylvania. This Honorable Court also sits in Reading, Pennsylvania. The acts complained of occurred in Reading, Pennsylvania. The Defendants named herein reside in the City of Reading and are employed by the City of Reading.

**Factual Background**

6.     On June 14, 2002, at approximately 1:30 AM, the Plaintiff was driving his automobile on Franklin Street, between 8th and 9th Streets, in the City of Reading, when he became the victim of an unprovoked attack.

7.     Franklin Street is a public street, under the ownership, control and supervision of the Defendants.

8.     The Plaintiff had received a telephone call from a friend who was seeking employment, and who asked the Plaintiff to come and speak with her. The Plaintiff went to meet this friend on Thursday night, June 13, 2002, at her home in Reading.

9.     After meeting with this friend, the Plaintiff decided to stop at the home of another friend, who lived near 11th and Franklin Streets in Reading, and who was also seeking employment. When the Plaintiff arrived at her home, a young black man stuck his head out the window and told the Plaintiff that his friend, Kathleen, would be back in ten minutes.

10.     The Plaintiff drove around the block, and when he returned to Kathleen's home, he noticed two men in the doorway of the building. One of these men was the same man who had spoken to the Plaintiff earlier. These men looked at the Plaintiff when he tooted his horn, but did not say anything. The Plaintiff thought that they looked like unsavory characters and seemed suspicious. The Plaintiff drove away without saying anything.

11.     The Plaintiff was in the process of returning to the house, at approximately 1:30 AM, when his car was hit by a hail of bullets. One of the bullets went through the left rear door, and became embedded in the driver's seat. Had that bullet not been stopped by the seat, the Plaintiff would have been shot. Several other bullets hit the windshield, and several bullets hit the left outside mirror. This assault took place on Franklin Street, between 8th and 9th Streets.

12.     The Plaintiff sped off, turned onto Penn Street, where he saw several police cars. He drove to those policemen, who were investigating a burglary. One of these policemen told the Plaintiff to wait outside, and the Plaintiff did so. The Plaintiff waited for 30 to 45 minutes, but no police officer ever returned.

13.     The Plaintiff then telephoned the police, who told the Plaintiff that they would send an officer to him to take his information. The Plaintiff waited another 20 minutes, but no police officer ever came.

14.     The Plaintiff then called another friend, who called the police again. The police told her that they would send a car to meet the Plaintiff.

15.     One of the police officers investigating the burglary finally came back to the Plaintiff, and the Plaintiff explained to him what had happened to him. The officer said that the Plaintiff was lucky that he had not been killed, and that there are a lot of shooting in that part of town. Another officer said that the attackers were probably using the Plaintiff's car for target practice. The Plaintiff did not see any humor in this statement.

16.     The police officers only looked briefly at the Plaintiff's car, but did not take any evidence from the car. One bullet is still embedded in the driver's seat of the Plaintiff's car. The officers gave the Plaintiff their card, with an incident number, and went back to their other work.

17.     Later that night, the Plaintiff called the editor of the Reading Eagle newspaper, but he did not return the call.  The Plaintiff also called the Chief of Police to complain about what had happened, but he too did not return the Plaintiff's call.

18.     The Plaintiff called and spoke with the editor of the Reading Eagle on the following day.  The editor also told the Plaintiff that his car was being used for target practice, and treated the incident as if it were a joke.

## Liability

19.     The Plaintiff is an innocent victim, who was in Reading for business reasons.  He did not commit any crimes, he did not know his attackers, and he did nothing to provoke the attack.  He is not a drug dealer, and he is not a pimp.  He is a businessman whose business is located in Allentown, Pennsylvania.

20.     The Plaintiff's assailants shot at his car, and tried to murder him, for no apparent reason other than the fact that the Plaintiff was driving through a neighborhood belonging to thugs and criminals.

21.     The Plaintiff lives in Lehigh County, Pennsylvania, and is not familiar with the neighborhoods of Reading.

22.     The Defendants are much more familiar with this part of the city of Reading and knew or should have known that it was a high crime area.  They should have known that there had been other shootings in the area, because the police records will show that there have been several prior shootings there.

23.     The Defendants have a duty to warn the public, and especially visitors to the city, that they were taking their lives in their hands by entering a high crime area where criminals shoot innocent people at random.

24.    The Defendants have failed in their duty to the public by failing to install signs or other notices that would have warned people that they are risking their personal safety and their lives by entering the area.

25.    The Defendants have failed in their duty to the public by failing to remove trees and failing to install brighter street lights, to discourage criminals from lurking in high crime city neighborhoods. By failing to take such safety measures, the Defendants have aided and abetted criminals by making it easier for them to lie in wait for innocent victims such as the Plaintiff. The Plaintiff believes that the City of Reading has acted in concert with the persons who shot his car and tried to murder him, because it has done nothing to discourage criminal activity in this part of the City, and has done nothing to investigate this crime against the Plaintiff.

26.    Had there been signs posted, advising the public that Franklin Street was a high crime area and that there are frequent shootings in the area, the Plaintiff would not have driven through that neighborhood and would not have been attacked.

27.    The Defendants are directly responsible for the safety of the citizens and visitors to the city, and have failed in that responsibility by allowing innocent people to wander unknowingly into dangerous parts of town.

28.    The Defendants have an unprecedented obligation to the public to protect the personal safety of innocent citizens who are unaware of the extremely dangerous nature of certain city neighborhoods. This is especially important in connection with the Franklin Street area, since it is so close to the Sovereign Center, where children and families gather to enjoy sporting events and concerts.

29.    Had there been hazardous materials spilled in a city neighborhood, the Defendants would have erected signs advising visitors of that dangerous condition and directing traffic away from the area. Had there been a sinkhole in a city street, the Defendants would have erected

signs and diverted traffic away from the danger. There is no excuse for the Defendants not to make every effort to notify visitors of high crime areas and warn them to avoid the specific neighborhoods that pose a danger to their lives.

30.    The Defendants have failed in their obligation to protect the Plaintiff, as a visitor to Reading, because their police department has failed to investigate the crime committed against the Plaintiff. No investigator has contacted the Plaintiff concerning a criminal investigation, and no officer has ever sought to take possession of the bullet that was lodged in the car seat. That bullet is an essential piece of evidence, since a ballistics evaluation can be used to connect a suspect to this crime.

31.    The actions of the Defendants, and their failure to protect visitors to the City of Reading, have therefore placed unreasonable and burdensome restrictions on the Plaintiff's freedom to travel, in violation of the United States Constitution.

32.    The Plaintiff believes that after ballistics tests are performed on this bullet, the police will find that the bullet came from a gun which has killed some other innocent victim.

33.    The Defendants cannot argue that they were unaware of the dangerous conditions existing in the City of Reading, because their own police department's records document the violent crimes in this part of the city

34.    In the Plaintiff's own small investigation, he has learned that a man was shot recently only three blocks from where the Plaintiff was shot at. This man was shot in the face three times and died.

35.    The Plaintiff is fortunate that he was not injured or killed in this attack. If his family had been with him, they certainly could have been injured or killed by the bullet that entered through the back door.

36.    The Defendants are sheltering murderers, terrorists, and other violent criminals by providing an environment for them to easily stalk and victimize their prey.

37.    The Plaintiff maintains and insists, because of the nature of the facts, that the Defendants have a policy of racial inequality that is indifferent to the Plaintiff's civil rights and liberties. The Plaintiff argues that from the very onset of this case, race or gender was a deciding factor in how the Plaintiff would be treated or mistreated. For example:

(a)    When the Plaintiff first approached the police officers, there were 6 or 7 police cars investigating a burglary on Penn Street; there were also police dogs present. When the Plaintiff approached these police officers to report a shooting or a violent crime, he was told by a white police officer that he should go outside and someone should be with him in a few moments.

(b)    The Plaintiff followed the instructions of this police officer, and went outside and waited in his car for approximately 15 minutes. It was apparent to the Plaintiff that no police officer was coming to investigate the crime which had just been committed against him.

(c)    It was at this time that the Plaintiff contacted Reading's 911. The 911 operator told the Plaintiff that someone would be there to see him shortly. After waiting approximately 10 minutes, the Plaintiff tried to call 911 again, and still there was no response for help from the Reading Police Department.

(d)    At this time, the Plaintiff decided to call his friend, Jennifer Caswell Miller to ask her to contact the Reading Police Department at 911. To make a long story short, Jennifer Miller had to contact 911 twice before any help was dispatched to the Plaintiff.

(e)    What is so ironic about this whole ordeal is that there were at least 7 police officers less than 50 feet from the Plaintiff, and not one of them responded to the Plaintiff's emergency situation. During this delay, the shooter or shooters had ample opportunity to take flight.

38.    The Plaintiff maintains that from the very beginning, when the Reading Police Department saw him to be a black man or a man of color, the crime committed against was handled differently. The Plaintiff maintains that he was the victim of stereotypical thinking; i.e., a black man in a black car with tinted windows meant only one thing to the white police officers. The officers assumed that the Plaintiff was either a drug dealer or a pimp, and that there was no need for a formal investigation because it would confirm the racist concept of blacks killing blacks.

39.    The Plaintiff was made a victim twice: first by the shooters, and then by the Reading Police Department.

40.    The Plaintiff waited approximately 4 weeks before filing this suit, because he wanted to give the Defendants every opportunity to correct their wrongs. Several days after the shooting, the Plaintiff got a call from the Chief of Police, who asked the Plaintiff if any of his men had been out to see him or talk to him. The Plaintiff responded "No", and said that no one other that the initial two officers had ever contacted him.

41.    If the Plaintiff was a white man or woman, the area would have been surrounded by police officers that night, and there would have been at least 5 or 6 suspects taken into custody and questioned. In the instant case, no investigation was ever conducted, and no police officer has ever spoken to the Plaintiff. The Plaintiff was twice made a victim, in that the City of

Reading and its police department have one set of rules for white people and another for black people.

42.    **What this Court must be cognizant of is that the Plaintiff was almost murdered in cold blood on June 14, 2002, and that his children (ages 2, 5, 9, 15, 17, and 20) almost were denied the right to see their father on Father's Day, June 16.**

43.    The Plaintiff intends to file an Amended Complaint with the assistance of counsel.

## Conclusion

WHEREFORE, the Plaintiff demands judgment against the Defendants in the amount of Five Million ($5,000,000.00) Dollars per Defendant, plus interest, costs, attorney's fees, and such other relief as is deemed appropriate by the Court.

Respectfully submitted,

JASON ROMAN
Plaintiff (pro se)
2327 Hanover Avenue
Allentown, PA  18109

A telephone message for the Plaintiff can be left at (610) 691-7633.

I do hereby certify that I am the Plaintiff in this action, and that the facts and circumstances contained in the foregoing Complaint are true and correct, to the best of my knowledge, information, and belief. I understand that any false statements herein are made subject to the penalties of 18 Pa.C.S.A. 4904, relating to unsworn falsification to authorities.

JASON ROMAN

Date: July 17, 02