# EXHIBIT A

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

ATTORNEYS AT LAW

DANIELLE M. WHITE
ADMITTED IN PENNSYLVANIA & NEW JERSEY

DIRECT DIAL
215-772-7327

dwhite@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
Fax 215-772-7620

LIBERTY VIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
Fax 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
Fax 302-504-7820

October 10, 2003

**VIA CERTIFIED MAIL**

Jason Roman
911 Varnsdale Road
Allentown, PA 18103

     Re:    *Roman v. City of Reading and Reading Police Department*
             *USC EDPA No. 02-CV-4763*

Dear Mr. Roman:

     I hereby serve you with the following:

     (1)    Disclosures By Defendants City of Reading And Reading Police Department Pursuant to Fed. R. Civ. P. 26(A)(1);

     (2)    Defendants' First Set of Interrogatories Directed to Plaintiff Jason Roman;

     (3)    Defendants' First Set of Requests For Production of Documents Directed to Plaintiff Jason Roman; and

     (4)    Notice of Deposition for Plaintiff Jason Roman.

     Please note that the Federal Rules of Civil Procedure require all parties to make initial disclosures that provide: (1) the name and address of each individual likely to have information regarding that parties claims or defenses; (2) a copy of or a description of all documents that the party may use to support his claims or defenses; (3) a computation of damages; and (4) a copy or description of any insurance agreement. Kindly provide plaintiff's disclosures in conjunction with the discovery responses.

     Please also note that the Federal Rules of Civil Procedure require that responses to Interrogatories and Requests for Production of Documents be served within 30 days of receipt.

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

Jason Roman

October 10, 2003
Page 2

If you have any questions about the enclosed documents, the request for plaintiff's initial disclosures, or about the deposition scheduled for November 3, 2003 at 10 a.m., please do not hesitate to contact me.

Sincerely,

Danielle M. White

DMW
Enclosures

# EXHIBIT B

November 3, 2003

David J. MacMain, Esquire
Danielle M. White, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

BY FAX AND BY REGULAR MAIL

Re:    Roman vs. Reading
        Federal Court No. 02-CV-4763

Dear Counsel:

For the past several months, I have been under doctors' care and I have been confused lately as to my times and dates. I have consulted with Attorney W. Thomas Anthony, who has agreed to represent me in this matter.

I want to apologize for the misunderstanding I had with respect to the deposition scheduled for today's date. I was of the impression that the deposition was to be taken on December 3. Attorney Anthony informed me that he would be sending you a letter letting you know that he would be representing me in the future.

Once again, I am terribly sorry for the confusion and the delay. I have instructed Mr. Anthony to contact your office and arrange for a new time and date for my deposition to be taken.

Thank you very much for your time, and of course, for your understanding.

Sincerely yours,

Jason Roman

Jason Roman
911 Barnsdale Road
Allentown, PA 18103
(610) 821-0248

cc:    W. Thomas Anthony, Esq.
        J. R.

# EXHIBIT C



**W. THOMAS ANTHONY, JR.**
ATTORNEY AT LAW
451 MAIN STREET
BETHLEHEM, PENNSYLVANIA 18018
(610) 691-7633
FAX: (610) 866-4626

November 4, 2003

David J. MacMain, Esquire
Danielle M. White, Esquire
Montgomery. McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Re:    Jason Roman vs. City of Reading, et al.

Dear Mr. MacMain and Ms. White:

Please be advised that I have been contacted by Jason Roman to represent him in his action against the City of Reading, which is now pending in the U. S. District Court for the Eastern District of Pennsylvania.

Late yesterday afternoon in connection with this case, Mr. Roman showed me the notice of deposition which you had sent to him. We both discovered that the deposition was scheduled for yesterday morning. He had told me previously that the deposition was scheduled for a later date. We apologize sincerely for this error, and we would like to reschedule the deposition at your convenience.

Since I am out of my office quite often, it is sometimes easier to reach me by my pager. That number is (610) 798-8661. Just enter your phone number after you hear the beeps; there is no voice message. I will await to hear from you in this regard.

Very truly yours,

W. Thomas Anthony, Jr., Esquire

cc:    Jason Roman

# EXHIBIT D

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

ATTORNEYS AT LAW

JANELLE E. FULTON
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7685

jfulton@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTY VIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

ONE WESTLAKES, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

November 11, 2003

**BY FACSIMILE ONLY**

W. Thomas Anthony, Esquire
451 Main Street
Bethlehem, PA  18018

   Re: *Roman v. City of Reading and Reading Police Department*
     USDC EDPA No. 02-CV-4763        

Dear Mr. Anthony:

   Per our telephone conversation, attached is a copy of the Second Amended Notice of Deposition rescheduling your client's deposition for  Monday, November 17, 2003, beginning at 10:00 a.m. at our office.  I served the original of this Notice on your client by letter dated November 4, 2003.

   In addition, please note that we served the following on your client on October 10, 2003:

  (1) Disclosures by Defendants City of Reading and Reading Police Department Pursuant to Fed. R. Civ. P. 26(A)(1);

  (2) Defendants' First Set of Interrogatories Directed to Plaintiff Jason Roman; and

  (3) Defendants' First Set of Requests for Production of Documents Directed to Plaintiff Jason Roman.

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

W. Thomas Anthony, Esquire
November 11, 2003
Page 2

The answers to the written discovery are now due. If Mr. Roman has not provided you with these materials, or if he is unable to do so, and you would like me to send you a copy, let me know.

Finally, please send me a copy of your entry of appearance on behalf of Mr. Roman at your earliest convenience.

Sincerely,

Janelle E. Fulton

JEF:bms
Enclosure

cc:    David J. MacMain, Esquire (w/o enclosure)

# EXHIBIT E

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

ATTORNEYS AT LAW

JANELLE E. FULTON
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7685

jfulton@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTY VIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

ONE WESTLAKES, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

November 17, 2003

**BY FACSIMILE AND REGULAR MAIL**

W. Thomas Anthony, Esquire
451 Main Street
Bethlehem, PA 18018

Re:  *Roman v. City of Reading and Reading Police Department*
USDC EDPA No. 02-CV-4763

Dear Mr. Anthony:

This will confirm that, on Friday, November 14, you advised my secretary that you were unable to attend your client's deposition on Monday, November 17, but that you are available on December 3 at 11:00 a.m. Accordingly, enclosed is a Third Amended Notice of Deposition rescheduling Mr. Roman's deposition for Wednesday, December 3 at 11:00 a.m. in our office.

In addition, your client's initial disclosures and his answers to Defendants' written discovery are now overdue. Please provide these within ten (10) days so we are not forced to burden the Court with a discovery motion.

Sincerely,

Janelle E. Fulton

JEF:bms
Enclosure
cc:  David J. MacMain, Esquire (w/o enclosure)

# EXHIBIT F

## Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 3
 4   JASON ROMAN,        : NO. 22-CV-4763
             Plaintiff :
 5                       :
                         :
 6                       :
        vs.              :
 7                       :
                         :
 8                       :
     CITY OF READING, AND    :
 9   READING POLICE DEPARTMENT :
             Defendant :
10
                 ---------
11          Wednesday, December 3, 2003
                 ---------
12
13
14          Deposition of JASON ROMAN, taken pursuant to
15   notice at the law offices of Montgomery, McCracken,
16   Walker & Rhoads, 27th Floor, 123 S. Broad Street,
17   Philadelphia, Pennsylvania, on the above date,
18   beginning at approximately 11:00 before Celeste
19   Perla, Certified Shorthand Reporter and Notary
20   Public.
21
22   ------------------------------------
             MONTCO REPORTING SERVICE
23           Court Reporting Services
             1000 Gypsy Hill Road
24           Lower Gwynedd, Pennsylvania 19002
             (215) 643-1228 (Ofc.)
```

## Page 2

```
 1   APPEARANCES:
 2
 3
 4
 5      LAW OFFICE OF THOMAS ANTHONY, JR.
 6      BY:  THOMAS ANTHONY, JR., ESQUIRE
 7        451 MAIN STREET
 8        BETHLEHEM, PA 18018
 9        610.691.7633
10      Representing the Plaintiff
11
12
13      MONTGOMERY, MCCRACKEN, WALKER & RHOADS
14      BY:  JANELLE FULTON, ESQUIRE
15        123 S. BROAD STREET
16        27TH FLOOR
17        PHILADELPHIA, PA 19109
18      Representing the Defendants
19
20
21
22
23
24
```

## Page 3

```
              INDEX
 1
 2   WITNESS                    PAGE
 3   JASON ROMAN
 4      Examination by Ms. Fulton        4
 5      Examination by Mr. Anthony
 6
 7
 8            ---------
 9            EXHIBITS
10   NUMBER     DESCRIPTION       PAGE
11   Exhibit-1   Reading Police Department
                 Crime Investigation Report   100
12   Exhibit-2   Drawing               101
13
14
15
16
17
18
19
20
21
22
23
24
```

## Page 4

```
 1          It is hereby stipulated by and
 2   between counsel that the sealing,
 3   certification and filing are waived, and
 4   that all objections, except as to the
 5   form of the question, are reserved until
 6   the time of trial.
 7          ----------
 8            JASON ROMAN,
 9   having been first duly sworn, is examined
10   and testifies as follows:
11          ----------
12   BY MS. FULTON:
13   Q.  Mr. Roman, my name is Janelle Fulton, I
14   represent the City of Reading and the City of Reading
15   Police Department.
16   A.  Okay.
17   Q.  We are the defendants in this lawsuit.
18          I am going to give you some introductory
19   instructions.
20          But before we begin with anything, I know
21   you have some trouble with heights and expressing
22   concerns about coming up to our offices for your
23   deposition.  So I want to ask you if there is
24   anything that would cause you to have difficulty with
```

## Page 5

```
 1   your memory or answering any of the questions I ask
 2   you today.
 3   A.  Yes.  Well, there would be.  I mean, see, I have
 4   anxiety attacks and that is what, I was afraid of
 5   heights, you know.  I am not afraid of the
 6   deposition, just the heights and it may impair my
 7   memory, I don't know, that is why I asked you how
 8   long it is going to take.  Right now I feel okay, but
 9   ten minutes from now I might not feel okay.  I just
10   feel very dizzy, that is all I am saying.
11   Q.  You feel dizzy now as you are sitting here?
12   A.  Yes.
13   Q.  If you would like some water that might help
14   you?
15   A.  No.
16   Q.  Okay.
17         MR. ANTHONY:  At any point
18   during the deposition you need to either
19   take a break, let us know.
20   BY MS. FULTON:
21   Q.  If you want to take a break to get something to
22   drink, to rest, to collect your thoughts, to go to
23   the bathroom, let us know.  If you would like to
24   speak to your attorney, let us know.
```

## Page 6

```
 1          If at some point you think you're having
 2   problems with your memory or focusing on the
 3   questions or understanding my questions, let me know.
 4   A.  Okay.
 5   Q.  If I ask a question that you don't understand or
 6   you don't hear, tell me and I will repeat it or try
 7   to rephrase it for you.  If you don't tell me, I will
 8   assume that you understand my question as well as the
 9   answer that you give me.
10   A.  All right.
11   Q.  I need all of your answers to be verbal so the
12   Court Reporter here can take down what you are
13   saying.  She can't understand a shake of the head.
14   A.  I understand.
15   Q.  Or she can understand it but she can't take it
16   down.
17          Again, as a courtesy to the Court
18   Reporter, when I am asking a question if you can let
19   me finish asking a question before you give your
20   answer, makes it a lot easier for her and I will try
21   to do the same for you as well.
22   A.  Okay.
23   Q.  Would you like to read and sign your
24   transcript?  At the end you have an opportunity to
```

## Page 7

```
 1   review it, to make sure it's accurate, taken down
 2   accurately or you can waive that right.
 3         THE WITNESS:  What do you think?
 4         MR. ANTHONY:  It is your
 5   choice.  If you believe the stenographer
 6   is going to be accurate.
 7         THE WITNESS:  Read and sign it
 8   then.
 9   BY MS. FULTON:
10   Q.  Have you taken any medication this morning?
```

**Page 123**

5   state troopers.
6       As a result of this incident, do you have
7   any problem with police officers?
8   A.  Do I have distrust?  Yes.  Do I hate them?  No.
9   I look at police officers now as, not all of them,
10  advocate, what they speak and I deal with them on an
11  individual basis rather than on a general basis.
12  But, like I said, like Kyle Bollinger and I made that
13  perfectly clear to you.  I think he is one of the
14  finest human beings that I have ever known.
15  Q.  Do you know any other Reading police officers?
16  A.  I met one but I don't know his name.  He is a
17  young guy, great, and this was about five months ago
18  because some girl needed to go to Court up there.
19      THE WITNESS:  What is the name
20  of that girl?
21      MR. ANTHONY:  Oh.  Bell.
22      THE WITNESS:  Christina Bell.
23  She had a problem with a boyfriend.  Her
24  boyfriend said she stole money from him.

**Page 124**

1   She asked me, I met her at a mall and she
2   asked me if I knew a lawyer that could
3   represent her and I got her Tom.  And so
4   when she went to Court I went down there
5   and I will find out this officer's name.
6   Nice guy.
7   BY MS. FULTON:
8   Q.  You have no problem with him?
9   A.  No.  No.  Listen.  I don't see -- I just don't
10  see -- I am sorry.  I just think that I am just -- I
11  am just hurt, angry at the way I was treated.
12      I went and I still go see Doctor Daley and
13  I am always told by Doctor Dedannia, don't ever take
14  matters in your own hands.  Pick up the phone and
15  talk to somebody.  Talk to somebody and that is
16  exactly what I did.
17  Q.  And you're angry and hurt about the way you were
18  treated?  What you mean is, because they didn't ask
19  you if you were shot, ask you if you needed medical
20  attention --
21  A.  They didn't take none of the evidence.  I am a
22  law-abiding citizen, I expect my police department
23  wherever I am at to cooperate.  They tell you that in
24  every -- every television program then when you go to

**Page 125**

1   do that, nobody, nobody asked you two words, hey, can
2   I get them bullets.  I swear to God.  Every time -- I
3   had to take the bullets away because every time I
4   seen the bullets my mind would just go blank and I am
5   sure that if you were ever shot at and if you were a
6   father or a mother that has -- and it's just a couple
7   days before Mother's Day and somebody is trying to
8   kill you for no reason, none, zero, zero reason, I am
9   sure you would not be happy with the police
10  department.  You would not be happy with the people
11  trying to kill you.  How could you be.  You are only
12  human.
13  Q.  You said in paragraph 19 of your Complaint, you
14  made a point of saying that you are not a drug
15  dealer.  You are not a pimp.
16      Why did you put that in the Complaint?
17  A.  Because of the car.  I didn't want to be
18  stereotyped.
19      When you look at the car, the way the car
20  is designed, in California anybody would have that
21  kind of car.  In Reading, Pennsylvania, like I had --
22  the guy that has a car like this, the officer said to
23  me, were you here earlier.  You ran a red light.  I
24  said, no, I am from Allentown.  I just got here.  He

**Page 126**

1   said, well, we were chasing a car similar to this
2   earlier tonight.  So I later upon my own
3   investigation find out he is a drug dealer.  I am
4   none of that.
5   Q.  The car that they saw earlier --
6   A.  Yeah.
7   Q.  -- belonged to a drug dealer and it looked like
8   your car?
9   A.  Identical.
10  Q.  Identical.
11  A.  Except for the wheels.
12  Q.  In paragraph 31 of the Complaint you said, the
13  actions of the defendants and their failure to
14  protect visitors to the City of Reading have placed
15  an unreasonable and burdensome restrictions on your

**Page 126** (right column)

16  freedom to travel in violation of the USA
17  Constitution.
18      How is there --
19  A.  In other words, I shouldn't have to live in fear
20  with driving down the street at nighttime because of
21  fear in being shot at.  That is the restriction.  I
22  won't go down that street at dark time.  If you
23  would at the Sovereign Center, oh, can you pick me
24  up at eleven o'clock, I don't think so.  I am not

**Page 127**

1   going down that street.  When I went down there
2   during the day, I mean, I had an anxiety attacks.
3   Feels like all the walls are going -- and that is
4   what I meant by restriction, on the right of freedom
5   to travel.  I can't travel freely down that street,
6   can't.  Not at nighttime.  During the day.
7   Q.  Because of the failure to protect?
8   A.  Right.  Exactly.
9   Q.  In paragraph 37 you said that the defendants
10  have a policy of racial inequality that is
11  indifferent to your civil rights and liberties.
12  A.  As I said to you earlier, I believe that if I
13  was a white person, if I was a doctor, lawyer or a
14  real estate agent or accountant, I don't think I
15  would have been treated the same way.  I don't think
16  I would have been told I am one lucky son of a bitch
17  and that my car has been used as target practice.  I
18  believe that there would have been a full police
19  investigation.  I believe that the police department
20  would have collected the evidence and I think they
21  would have asked me if I needed help and I think they
22  would have treated me with the utmost of dignity.
23  They didn't do that.
24  Q.  What evidence that the defendants have a policy

**Page 128**

1   of racial inequality do you have?
2   A.  Well, as I said, that I don't believe that -- if
3   you like -- I mean, I can go ahead and go to the
4   Reading Eagle and get a list of how many white
5   persons were shot at and ask them and if they were
6   treated the same way.  I believe this, what I wrote.
7   I believe that I was treated indifferently because
8   when I talk to different police departments they ask
9   me, was this done, was that done.  I says no.  Did
10  they collect the evidence.  Did they impound the
11  car.  Did they make sure you were okay.  None of the
12  things that a police officer should have done is done
13  here.  I don't care how.  If I have to, I will go to
14  different police departments and get what their
15  regulations are with respect to a shooting and with
16  respect to a victim in a shooting, but if we go to
17  trial I will be prepared with that information.
18  Q.  You also said that race or gender was a deciding
19  factor in how you were treated?
20  A.  I believe that.  That is what I believe.
21  Q.  Was race or gender or both?  Do you think you
22  would have been treated differently if you were a
23  woman?
24  A.  If I was a white woman I would have been treated

**Page 129**

1   differently.  If I was a white man I would have been
2   treated differently.  Yes.  I believe exactly what I
3   wrote here.
4   Q.  Before we were first getting started, you
5   mentioned you had your deposition taken in the last
6   five months.
7   A.  Yes.
8   Q.  And you said that is a lawsuit you have against
9   the Allentown Zoning Board?
10  A.  Yes.
11  Q.  Is that lawsuit pending in State Court or in
12  Federal Court?
13  A.  Federal Court.
14  Q.  In the Eastern District?
15  A.  Yes.
16  Q.  Which Judge?
17  A.  Judge Lacom Davis and Tom Anthony represents me
18  in that lawsuit and John Keller; Attorney John
19  Keller.
20  Q.  And do you know who represents Allentown?
21  A.  James Hubert.
22  Q.  Have you been involved with any other civil
23  lawsuits?
24  A.  I am trying to think.  Just a -- what was it?

### Page 130

1 Against the City of York. County of York. What was
2 that? Injunctive relief, right.
3 **Q. When was that?**
4 A. Oh, God. That was almost two years ago.
5 **Q. Versus York County?**
6 A. Uh-huh.
7     MR. ANTHONY: City, not the
8 county.
9     THE WITNESS: Was it the city?
10     MR. ANTHONY: I think it was.
11 BY MS. FULTON:
12 **Q. Was that in Federal Court?**
13 A. Yeah. Up in the Middle District.
14     See, what happened there was, the Court
15 said, and I am undecided whether I want to sue them.
16 They said I did not have any standing for injunctive
17 relief, however, they left open the fact that I could
18 bring a suit for violating my rights.
19 **Q. How did they violate your rights?**
20 A. Well, it was on a PFA. I wrote a letter about
21 my daughter Conciata and the police took the letter
22 and said that I was in violation of the PFA order.
23 Well --
24 **Q. Protection From Abuse?**

### Page 131

1 A. Right. When that was issued it's checked that I
2 could talk with her concerning the custody. Well,
3 they took that and said, well, we are going to charge
4 you with indirect criminal contempt. There's
5 anything threatening in the letter? Absolutely not.
6 What is their name? Randell handed the opinion down
7 and -- what she basically said is, you don't have
8 injunctive -- you don't have a standing for
9 injunctive relief but a lawsuit is a different story
10 because it's a serious First Amendment violation.
11     And the fact was, that I wrote the letter
12 to the mother inquiring -- telling her about my
13 daughter and wanted to see her and resolve the
14 custody dispute. And I think that we do have in the
15 transcript from Judge Ford who encouraged me to
16 contact the mother to resolve the custody issue.
17 **Q. The mother has a Protection From Abuse order?**
18 A. Not no more she did, but when I did this York
19 County -- York, the city, the City of York, I guess
20 the mother took the letter and said, well, he had
21 contact with me. Well, I had contact but not in a
22 negative way. Hi, how is my daughter. When can I
23 see her. When can we resolve the custody issue and
24 that is what that was about.

### Page 132

1 **Q. Okay.**
2     **Other than the lawsuit versus Allentown**
3 **and the lawsuit versus York, any other lawsuits?**
4 A. I had one against the Morning Call Newspaper.
5 **Q. How long ago was that?**
6 A. That was about five, six years ago and that was
7 settled out of court.
8 **Q. What Court was that in, State or Federal?**
9 A. Federal.
10 **Q. In the Eastern District?**
11 A. Yes.
12 **Q. What Judge was that?** He is from -- gees, I
13 can't think. He is retired now. McTroutman. Did
14 you know Judge McTroutman?
15 **Q. No.**
16 A. Beautiful Judge. Beautiful. Beautiful man. He
17 is retired now but he ruled against -- it was the
18 first case in history in the United States where the
19 major newspaper company was ruled against. It was
20 the First Amendment issue too. They wouldn't -- they
21 had all sorts of white advertisers for the adult
22 business in the newspaper but when he came to me they
23 said I couldn't and they didn't justify why I
24 couldn't. So the District Court said they were

### Page 133

1 wrong.
2 **Q. And you were advertising for what?**
3 A. The exotic dance club.
4 **Q. Any other lawsuits?**
5 A. No, not that I know of. Not that I can think
6 of.
7     MR. ANTHONY: Custody actions.
8 BY MS. FULTON:
9 **Q. Where was your deposition taken in this**

### Page 134

10 Allentown --
11 A. Jim Hubert's office.
12 **Q. Where is that?**
13 A. That is Hamilton Street in Allentown.
14 **Q. Allentown?**
15 A. Jim is a nice guy too. I have respect for Jim.
16 **Q. Did you have any depositions in the case against**
17 **York?**
18 A. No.
19 **Q. What about in the case versus The Morning Call?**
20 A. No.
21 **Q. Have you ever sued Lehigh County?**
22 A. Oh, when I was a prisoner. Yeah.
23 **Q. Any other lawsuits when you were a prisoner?**
24 A. I won that case too.

### Page 134

1 **Q. What was the basis of your lawsuit when you were**
2 --
3 A. Lehigh County?
4 **Q. Yeah.**
5 A. What happened was, I was on a pretrial detainer,
6 I was representing myself so what they did is, they
7 sent me in one direction, sent my legal material in
8 another direction and the Third Circuit Court of
9 Appeal said this is a no-no. Can't do that.
10 **Q. How long ago was that?**
11 A. What was that? Back in '87, '88. Other than
12 that, I can't think of anybody else that I sued.
13 **Q. Have you been sued by anybody?**
14 A. No. You want to sue me? You make me laugh. I
15 get a kick out of you.--Have I been sued by anybody?
16 No. Most people say they just don't want to -- I can
17 write a lot. This is really, this is really nothing.
18 **Q. The Complaint?**
19 A. Oh, it's nothing. Usually I write and write and
20 I can't stop writing. It's like a habit.
21 **Q. I think I have a few more questions for you.**
22     We served interrogatories and document
23 requests on you in the beginning of October before
24 your lawyer got involved.

### Page 135

1 A. I never got them.
2     MR. ANTHONY: I will make sure
3 he fills out that stuff and gets you the
4 information.
5     THE WITNESS: I never got it.
6 Did you get it?
7     MR. ANTHONY: Can you make a
8 copy while I am here?
9     MR. FULTON: I will make a
10 copy.
11     THE WITNESS: If I had it, he
12 would have had it.
13     MR. ANTHONY: I will make sure
14 he responds to that promptly.
15     THE WITNESS: Try to ask for
16 demur, ha. You make me laugh. I like
17 you. How did you get in this firm? This
18 is a big firm.
19     MR. ANTHONY: Off the record I
20 guess.
21     (Whereupon, a discussion was held
22 off the record.)
23     (Proceedings were reconvened with
24 all counsel and the witness being

### Page 136

1 present.)
2 BY MS. FULTON:
3 **Q. Have you ever received any treatment for drug or**
4 **alcohol dependency?**
5 A. No. No. You didn't hear a word I said before.
6 I understand.
7 **Q. Other than your treatment with Doctor Daley and**
8 **Doctor Dedannia, Doctor Shingles and Doctor Geronimo,**
9 **have you received any other counseling or therapy or**
10 **psychiatric treatment?**
11 A. No. Not that I can think of.
12 **Q. Have you filed any complaints either against or**
13 **with any other police departments?**
14 A. I think so. Maybe in that suit against
15 Allentown. Maybe that. Maybe.
16 **Q. The zoning suit?**
17 A. Yeah, the zoning suit.
18     If I can, let me try to clarify so you are
19 not in the dark. If I did, I think the Allentown

# **EXHIBIT G**

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP

ATTORNEYS AT LAW

JANELLE E. FULTON
ADMITTED IN PENNSYLVANIA

DIRECT DIAL
215-772-7685

jfulton@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTY VIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

ONE WESTLAKES, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

December 30, 2003

**BY FACSIMILE AND REGULAR MAIL**

W. Thomas Anthony, Esquire
451 Main Street
Bethlehem, PA  18018

Re:   *Roman v. City of Reading and Reading Police Department*
      USDC EDPA No. 02-CV-4763

Dear Mr. Anthony:

On October 10, 2003, we served interrogatories and requests for production of documents on your client. On December 3, I provided you with an additional copy of the interrogatories and document requests. Your client's answers to Defendants' written discovery are nearly two months overdue. Furthermore, I have still not received your client's initial disclosures. Finally, on by letter dated December 9, 2003, my paralegal advised you that two of the providers your client identified at his deposition require that their own releases be executed before they will release Mr. Roman's records and she forwarded those release to you for your client's signature.

If I do not receive these materials within ten (10) days, I will have no choice but to file a motion with the Court.

Sincerely,

Janelle E. Fulton

JEF:bms
cc:   David J. MacMain, Esquire
      Eileen Binderman

# EXHIBIT H

MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
ATTORNEYS AT LAW

**EILEEN BINDERMAN**
LEGAL ASSISTANT

DIRECT DIAL
215-772-7407

ebinderman@mmwr.com

123 SOUTH BROAD STREET
AVENUE OF THE ARTS
PHILADELPHIA, PA 19109
215-772-1500
FAX 215-772-7620

LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 600
CHERRY HILL, NJ 08002
856-488-7700
FAX 856-488-7720

300 DELAWARE AVENUE, SUITE 750
WILMINGTON, DE 19801
302-504-7800
FAX 302-504-7820

ONE WESTLAKES, SUITE 200
BERWYN, PA 19312
610-889-2210
FAX 610-889-2220

December 9, 2003

**VIA FIRST CLASS MAIL**

W. Thomas Anthony, Esquire
451 Main Street
Bethlehem, PA  18018

>     *Re:*     *Jason Roman v. City of Reading and Reading Police Department*
>             *U.S.D.C. for the E.D. of Pa., No. 02-CV-4763*

Dear Mr. Anthony:

Thank you for having your client sign the HIPAA-Compliant Authorizations to release medical and psychological records at his deposition last week.

I have contacted 5 of Mr. Roman's medical providers, and while several have said they will accept this firm's HIPAA Compliant Authorization, 2 of the providers have their own releases that must be executed before they will release Mr. Roman's records.  I have enclosed these releases, and ask that you have your client sign and date them where indicated (Lehigh County also requires signature of a witness) and return them to this office as soon as possible.

Thank you in advance for your assistance in this matter.

Very truly yours,

Eileen Binderman

/eb
Enclosures
cc:     Janelle E. Fulton, Esquire (w/enclosures)

A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA
LOUIS A. PETRONI – NEW JERSEY RESPONSIBLE PARTNER

# EXHIBIT I



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON ROMAN,          :
   Plaintiff          :
                       :
                       :
       v.          :          CIVIL ACTION
                       :          NO.   02-4763
CITY OF READING, ET AL.,          :
   Defendants          :
                       :

# FILED

FEB - 3 2004

MICHAEL S. KUNZ, Clerk
By_____Dep. Clerk

## O R D E R

AND NOW, this 3rd day of February, 2004, upon consideration of Defendants' Motion

to Compel [Doc. # 20], and in the absence of any timely response thereto, see Local R. Civ. P.

7.1(c),[1] it is hereby **ORDERED** that Defendants' Motion is **GRANTED** as uncontested. Upon

consideration of the grounds set forth in Defendants' Motion, it is specifically **ORDERED** that:

1. Plaintiff must provide to Defendants before the close of discovery his Rule 26(a)(1)

initial disclosures including, inter alia, the names and addresses of witnesses (if any) and exhibits

(if any);

2. Plaintiff must provide to Defendants before the close of discovery full and complete

answers to Defendants' First Set of Interrogatories Directed to Plaintiff;

3. Plaintiff must provide to Defendants before the close of discovery full and complete

answers to Defendants' First Request for Production of Documents and Things Directed to

---

[1] Defendants filed the instant Motion to Compel on January 15, 2004. Although the certificate of service
fails to state the method of service, the Court assumes it was served by first-class mail. Accordingly, under Federal
Rule of Civil Procedure 6(e) and Local Rule 7.1(c), Plaintiff's response was due within seventeen days, i.e., on or
before February 2, 2004. No response was filed as of today. Therefore, the motion is granted as uncontested.
    Discovery in this case closes on February 13, 2004 and dispositive motions are due on or before February
23, 2004. Accordingly, in order to ensure that discovery disputes do not interfere with any deadlines in this case, the
Court must address pending discovery motions in a timely manner. Although Plaintiff filed this action pro se,
Defendants informed the Court that he is now represented by counsel. Accordingly, the Court expects counsel for
Plaintiff to comply strictly with all relevant deadlines.

Plaintiff and produce all documents and things requested therein;

    4. Plaintiff must provide to Defendants before the close of discovery a signed HIPAA

Authorization addressed to: (a) the Lehigh County Office of Mental Health and (b) Lehigh

Valley Hospital and Health Network - Mental Health Clinic.

    It is so **ORDERED**.


            **BY THE COURT:**

            _[signature]_

            **CYNTHIA M. RUFE, J.**


RECEIVED BY FAX ON:

**ENTERED**

FEB - 4 2004

**CLERK OF COURT**

# EXHIBIT J

```
*********************
***   TX REPORT   ***
*********************
```

COMPLETED

TRANSMISSION OK

```
TX/RX NO              3920
CONNECTION TEL        54348#36#16108664626
SUBADDRESS
CONNECTION ID
ST. TIME              02/04 14:47
USAGE T               01'08
PGS. SENT             3
RESULT                OK
```

Chis Polk
27 Sw

# MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
### A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA

123 South Broad Street
Philadelphia, PA  19109

## FAX TRANSMISSION

REPLY TO:
PHILADELPHIA OFFICE

**MMW&R is transmitting
from: (215) 772-7620**

NEW JERSEY OFFICE:
CHERRY HILL, NJ
(Louis A. Petroni,
New Jersey
Responsible Attorney)

## ATTN:

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| W. Thomas Anthony, Esquire | | (610) 691-7633 | (610) 866--- |

**February 4, 2004 2:34 PM**

FROM:     Janelle E. Fulton                                   215-772-768?

**NUMBER OF PAGES: _3_ (including this cover page)**
If you do not receive all the pages indicated above,
please call us back as soon as possible at (215) 772-7471.

### _REMARKS:_

Please see attached Order in the matter of Jason Roman v. The City of Reading, which was

# MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP·
A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA

123 South Broad Street
Philadelphia, PA  19109

## FAX TRANSMISSION

REPLY TO:
**PHILADELPHIA OFFICE**

**MMW&R is transmitting
from: (215) 772-7620**

**NEW JERSEY OFFICE:
CHERRY HILL, NJ
(Louis A. Petroni,
New Jersey
Responsible Attorney)**

## ATTN:

| RECIPIENT | COMPANY | PHONE NO. | FAX NO. |
|---|---|---|---|
| W. Thomas Anthony, Esquire | | (610) 691-7633 | (610) 866-4626 |

**February 4, 2004 2:34 PM**

FROM:        Janelle E. Fulton                          215-772-7685

**NUMBER OF PAGES:** ⎰ **(including this cover page)**
If you do not receive all the pages indicated above,
please call us back as soon as possible at (215) 772-7471.

## *REMARKS:*

Please see attached Order in the matter of <u>Jason Roman v. The City of Reading</u>, which was
received by our office on this date.

UNLESS OTHERWISE INDICATED OR OBVIOUS FROM THE NATURE OF THE TRANSMITTAL, (1) THE SENDER, IF AN ATTORNEY, IS A MEMBER OF THE PENNSYLVANIA BAR, AND (2) THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR OR ARE NOT SURE WHETHER IT IS PRIVILEGED, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE. PLEASE DESTROY COPIES AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE AT OUR EXPENSE. THANK YOU.