IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON ROMAN, | : |
| | :   CIVIL ACTION |
|     Plaintiff, | : |
| v. | :   NO. 02-4763 |
| | : |
| | : |
| CITY OF READING and | : |
| READING POLICE DEPARTMENT, | : |
| | :   JURY TRIAL DEMANDED |
|     Defendants. | : |

**DEFENDANTS' REPLY BRIEF TO
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT PURSUANT TO RULE 37**

      Defendants City of Reading and Reading Police Department ("Defendants") hereby reply to Plaintiff's response to Defendants' Motion to Dismiss the Complaint Pursuant to Rule 37 of the Federal Rules of Civil Procedure. Plaintiff's Response relies on factual and legal inaccuracies in a last ditch attempt to "muddy the waters" in order to avoid dismissal of their frivolous claims. This Reply Brief will point out some of those inaccuracies.

**I.    INTRODUCTION**

      Defendants acknowledge that dismissal is the most severe penalty a court can impose upon a party. However, Plaintiff's conduct in this case warrants dismissal. In addition to Rule 37(d)[1] (failure to serve answers to interrogatories and document requests), Defendants also move the Court to dismiss Plaintiff's Complaint pursuant to Rule 37(b), for failure to comply with

---

[1] Plaintiff notes that counsel for Defendants did not attach a certificate of good faith to the Motion to Dismiss pursuant to Rule 37(d). However, counsel did attach a certificate of good faith to the underlying motion to compel, and attaches a certificate to this reply for good measure. Furthermore, Defendants' attempts to resolve the discovery issues are clearly set forth in the underlying Motion to Compel and Motion to Dismiss.

the Court's February 3, 2004 Order (see Defendants' Memorandum of Law in Support of the Motion to Dismiss at pp. 3-4) and 37(c), for failure to disclose the information required by Rule 26(a).

Plaintiff claims that he should not be penalized for his attorney's failure to abide by the Court's deadlines. However, the extent to which a party is personally responsible for the grounds on which dismissal is sought is merely one of the six Poulis factors[2] enumerated by the Court of Appeals for the Third Circuit, and not all of the Poulis factors need be met for a district court to find that dismissal is warranted. United States v. $ 8,221,877.16 in United States Currency, 330 F.3d 141, 161-62 (3d Cir. 2003) (citing Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 866, 868 (3d Cir. 1984); Ware v. Rodale Press, Inc., 322 F.3d 218, 221-22 (3d Cir. 2003). Moreover, "a client cannot always avoid the consequences of the acts or omissions of its counsel." Bowman v. Babbitt, No. 00-5716, 2001 U.S. Dist. Lexis 17429, at *2, *8 (E.D. Pa. Sept. 21, 2001) (dismissing the Complaint pursuant to Poulis even though it was unclear the extent to which the plaintiff was personally responsible for the disobedience of the Court's Order or for the failure to respond to discovery).

As highlighted below, and set forth more fully in Defendants' Motion to Dismiss, the circumstances of this case warrant dismissal under Poulis.

---

[2] The Poulis factors include (1) the extent to which a party is personally responsible for the grounds on which dismissal is sought; (2) the prejudice caused to the party's adversary by the party's failure to comply with a scheduling order or to respond to discovery; (3) the party's history of dilatoriness; (4) whether the conduct of the party or the party's attorney was willful or in bad faith; (5) the extent to which sanctions other than dismissal would be effective; and (6) the meritoriousness of the party's claim. Poulis, 747 F.2d at 868.

## II.     DISMISSAL IS APPROPRIATE UNDER THE CIRCUMSTANCES

### A.     Plaintiff's Claims Are Meritless

Plaintiff argues that his case should not be dismissed because he appeared for a deposition and because he has finally provided his initial disclosures and "full and complete answers" to Defendants' written discovery. However, this case has lingered for nearly two years without Plaintiff or his attorney coming forward with any evidence whatsoever to support Plaintiff's claims against Defendants. Mr. Anthony has represented Plaintiff in this case for at least four months, which is ample time for Plaintiff to produce his evidence. And yet, despite having finally produced his initial disclosures and answers to Defendants interrogatories and document requests, Plaintiff has still failed to produce any evidence whatsoever in support of his claims against Defendants. In fact, Plaintiff concedes that he has no evidence to support his bald allegations of racial discrimination and the violation of the right to travel.

Specifically, Defendants' Interrogatory No. 10 asked Plaintiff to identify any and all evidence to support his allegation that Defendants' conduct has placed an unreasonable restriction on his right to travel as alleged in Paragraph 31 of the Complaint. Plaintiff's "full and complete answer" was:

> The evidence of the restrictions on the Plaintiff's freedom to travel **lies with the Plaintiff himself**. He will testify as to the direct effect the conduct of the Defendants has had on his ability to travel in and about the City of Reading.
>
> **The Plaintiff has not completed the preparation of his case, and does not yet have all of his evidence available.** As the Plaintiff acquires additional evidence on this issue, he will supplement his answer to this interrogatory.

Plaintiff's Answer to Interrogatory No. 10 (emphasis added). A true and correct copy of Plaintiff's answer to this Interrogatory only[3] is attached hereto as Exhibit 1. Notably, Plaintiff testified at his deposition that he has returned to the City of Reading approximately 30 to 40 times since this incident. See Dep. tr., Roman at 60, 122 (attached to Defendants' Summary Judgment Motion as Exhibit F). Defendants fail to see how Plaintiff's testimony could possibly show that his right to travel has been restricted as a result of the incident at issue.

Similarly, Defendants' Interrogatory No. 11 asked Plaintiff to identify any and all evidence to support his allegation that Defendants have a policy of racial inequality and that he was treated differently because of his race, as alleged in Paragraph 37 of the Complaint. Plaintiff's "full and complete answer" was:

> The Reading Eagle contains countless newspaper articles which describe the uncontrolled shootings in the City of Reading. Minorities are the victims of these shootings, and very few of these cases are ever solved. The treatment given to the Plaintiff by the police fits in with this pattern of not protecting blacks and other minorities who are victims of shootings. There is absolutely no doubt that the Plaintiff would have been [treated] entirely differently if her were a white man who was shot at while in his car. The police officers saw the color of the Plaintiff's skin, and the type of car he was driving, and immediately assumed that he was a drug dealer or a pimp. The Plaintiff's skin color definitely caused the police to make their false assumptions and to decide not to investigate the Plaintiff's case.
>
> **The Plaintiff has not completed the preparation of his case, and does not yet have all of his evidence available.** As the Plaintiff acquires additional evidence on this issue, he will supplement his answer to this interrogatory.

Plaintiff's Answer to Interrogatory No. 11 (emphasis added), a copy which is attached hereto as Exhibit 2. This is the same answer that Plaintiff gave three months ago at his deposition, which Plaintiff claims provided Defendants with all the information they need to defend this case, except

---

[3] Plaintiff's Answers to Defendants' Interrogatories are attached in their entirety to Plaintiff's response to Defendants' Motion to Dismiss.

4

that then he said that he would "go to the Reading Eagle [newspaper] and get a list of how many white persons were shot at and ask them . . . if they were treated the same way" and that he would "go to different police departments and get what their regulations are with respect to a shooting and with respect to a victim in a shooting, but if we go to trial I will be prepared with that information." Dep. tr., Roman at 127-28. This matter is scheduled to enter the trial pool in approximately one month, and Plaintiff has come forward with no such evidence.

These "answers" are not evidence. They are merely bald allegations, unsupported by any evidence whatsoever, that do no more than echo the allegations contained in Plaintiff's Complaint. Nevertheless, Plaintiff claims that he has now fully responded to Defendants' discovery requests. Moreover, Plaintiff's statement that he "has not completed the preparation of his case, and does not yet have all of his evidence available" is completely unacceptable at this late stage of the litigation.

### B. Defendants Have Been Irreparably Prejudiced by Plaintiff's Failure to Participate in Discovery and to Comply with This Court's Deadlines

Plaintiff's claim that Defendants are not prejudiced by Plaintiff's failure to provide his initial disclosures and answers to Defendants' interrogatories and document requests and to otherwise participate in discovery is equally specious. Plaintiff's own Initial Disclosures and "full and complete answers" to Defendants' written discovery demonstrate the prejudice to Defendants. For example, for the first time in his Motion for Extension of Time, Plaintiff alludes to the fact that he intends to obtain a report from his treating physician. See Plaintiff's Motion for Extension of Time at ¶ 3. This is the first Defendants have heard that Plaintiff may introduce expert testimony at trial.

Furthermore, Defendants do not even know at this late date whether Plaintiff does, in fact, plan to use an expert. Despite his allusion in the Motion for Extension of Time,

5

Plaintiff states in his Initial Disclosures, dated March 7, 2004, that he "has not yet retained any experts to testify for him at trial. Dr. Daley, listed above, is a possible expert witness. The Plaintiff does not yet have a written report from any medical experts." Plaintiff's Initial Disclosures at ¶ 5, a copy of which is attached to Plaintiff's response to Defendants' Motion to Dismiss as Exhibit A. Likewise, in his "full and complete answers" to Defendants' Interrogatories, dated March 7, 2004, Plaintiff states that he "has not yet retained expert witnesses for trial. When he does so, this information will be provided to the Defendants." Plaintiff's Answers to First Set of Interrogatories at ¶ 18, a copy of which is attached to Plaintiff's response to Defendants' Motion to Dismiss as Exhibit A. Plaintiff provided the same response to Defendants' formal request that he produce reports and curriculum vitae of any experts. See Plaintiff's Answer to Request for Production of Documents at ¶ 11, a copy of which is attached to Plaintiff's response to Defendants' Motion to Dismiss as Exhibit A. When will Plaintiff let Defendants know whether he will produce an expert -- on the eve of trial? This conduct is unacceptable and completely eliminates Defendants' ability to prepare an adequate defense to Plaintiff's allegations.

Similarly, at his deposition, Plaintiff advised Defendants that he had photographs and a videotape of the damage to his automobile. Even though Defendants requested copies of any and all photographs and videotapes in their written discovery back in October 2003, and then again at Plaintiff's deposition in December 2003, Plaintiff did not produce copies of the photographs until March 8, 2004, less than one month before trial. Moreover, Plaintiff still has not produced the videotape.

Discovery is closed, Defendants spent the time and money to prepare a dispositive motion in accordance with this Court's Order, Plaintiff's pretrial memorandum is overdue, and

this case is scheduled to enter the trial pool in less than one month, but Defendants still do not know what evidence, if any, Plaintiff will present at trial to support his claims. Simply expanding the discovery period is not likely to cure this problem, since Plaintiff has failed to produce any evidence, even in the face of Defendants' Motion to Dismiss. Nor is precluding certain evidence likely to cure the problem, since Plaintiff has, to date, failed to come forward with any evidence whatsoever in support of his claims and, as such, preclusion of Plaintiff's evidence would be tantamount to a dismissal of the action.

Moreover, extending discovery would penalize and prejudice Defendants for Plaintiff's (or his attorney's) failure to participate in discovery and abide by the Court's deadlines, because Defendants have already incurred significant fees in their efforts to obtain discovery from Plaintiff and in the preparation of the Motion to Compel, the Motion to Dismiss, and the Motion for Summary Judgment. See Milligan v. Davidson, No. 95-7693, 1995 U.S. Dist. Lexis 17149, at *1, *20 (E.D. Pa. Nov. 19, 1996) ("Prejudice to one's adversary includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery.") Any sanction other than dismissal fails to cure the prejudice caused to Defendants by Plaintiff's refusal to cooperate with discovery.

### III. ALTERNATIVE SANCTIONS

    A. Plaintiff Should Be Precluded From Presenting Any Evidence Produced after February 13, 2004

Plaintiff failed to provide his initial disclosures or to respond to Defendants' discovery, despite Defendants' repeated requests and this Court's Order compelling him to do so, until after Defendants' filed their summary judgment motion and less than one month before the case is scheduled to enter the trial pool. Moreover, as discussed more fully in Section II(B), *supra*, Plaintiff alluded to the possibility that he might obtain a report from his treating physician

for the first time in his Motion for Extension of Time and his responses to Defendants' written discovery dated March 7, 2004.  See Plaintiff's Motion for Extension of Time at ¶ 3; Plaintiff's Answers to First Set of Interrogatories at ¶ 18; Plaintiff's Answer to Request for Production of Documents at ¶ 11. Plaintiff has also failed to produce pertinent evidence, such as images of the damage to his vehicle.  Plaintiff's failure to disclose this "evidence" has prevented Defendants from adequately defending this action.  As such, an appropriate sanction would be to preclude Plaintiff from presenting any evidence at trial to support his claims against Defendants or to support his alleged damages.

However, as noted in Defendants' Motion to Dismiss, this lesser sanction will be tantamount to the dismissal of Plaintiff's action.  See Lesser v. Aseron, Nos. 96-8121 and 97-6070, 1999 U.S. Dist. Lexis 113, at *2-7 (E.D. Pa. Jan. 11, 1999) ("if this Court were to preclude the Plaintiffs from presenting any medical evidence and from contesting any claim, testimony, or documentation presented by [the defendant] regarding the Plaintiffs' medical condition, the trial would be entirely pointless.")

B.   Additional Discovery for Defendants Only

If the Court is not willing to dismiss this action, based upon either Defendants' Motion to Dismiss or Defendants' Motion for Summary Judgment, and this case is to proceed to trial, then Defendants will require an additional sixty (60) days to conduct discovery. Defendants will need this additional time to, inter alia, obtain the records for which Plaintiff provided authorizations on March 8, 2004, including Plaintiff's records from the Social Security Administration, which frequently takes several weeks to respond to a subpoena.  Further, if Plaintiff does, in fact, intend to produce an expert in support of his claims, then Defendants request that this sixty-day period begin to run upon Defendants' receipt of Plaintiff's expert's

8

report, to allow for Defendants to conduct expert discovery, including an independent medical evaluation and the deposition of Plaintiff's expert witness.

### IV. AN AWARD OF ATTORNEYS' FEES IS AN APPROPRIATE SANCTION FOR PLAINTIFF'S CONDUCT

Plaintiff has a proven track record for failing to comply with Court Orders and Court imposed deadlines, and his dilatory conduct has forced Defendants to incur unnecessary attorneys' fees and wasted this Court's valuable resources.

Plaintiff also has a history of burdening this Court with frivolous civil rights lawsuits against municipalities and/or their law enforcement arm. For example, in the last five years, Plaintiff has filed four civil rights lawsuits, three[4] of which have been dismissed by the Court at an early stage, and one[5] which is currently pending in the Eastern District of Pennsylvania. Plaintiff's present lawsuit is likewise frivolous, and his refusal to cooperate with discovery has forced Defendants to incur attorneys' fees and costs to prepare and file the Motion to Dismiss, as well as the previous Motion to Compel. These fees and costs would not have been

---

[4] See James E. Rose, Jr. v. County of York, C.A. No. 02-0191 (M.D. Pa.), filed on February 6, 2002 (granting the defendants' motion to dismiss); James E. Rose v. County of Lehigh, C.A. No. 01-0013 (E.D. Pa.), filed on January 2, 2001 (granting the defendants' motion to dismiss); and James E. Rose v. Bethlehem Police Dep't, C.A. No. 97-0926 (E.D. Pa.), filed on February 7, 1997 (dismissing the complaint for failure to serve the other parties and denying Plaintiff's motion to vacate order of dismissal). Copies of the docket entries for these cases, which were printed from the ECF system, are attached hereto collectively as Exhibit 3. "James E. Rose, Jr." is one of Plaintiff's aliases.

[5] See Jimi Rose v. City of Allentown, C.A. No. 02-3842 (E.D. Pa.), filed June 18, 2002, one month before the present action. "Jimi Rose" is one of Plaintiff's aliases. A review of the docket in that case reveals similar dilatory conduct by Plaintiff. Specifically, the defendants filed a motion for summary judgment on December 5, 2003, in accordance with the Court's deadlines. On January 12, 2004, Plaintiff, who was also represented by Mr. Anthony in that case, filed a motion for an extension of time to respond to the summary judgment motion, which the Court granted that same day. Then, on January 26, 2004, after the defendants filed their summary judgment motion, Plaintiff filed a motion to extend the deadline for discovery, which had ended on November 10, 2003. That motion was denied by the Court. A copy of the docket entries for this case, which was printed from the ECF system, is attached hereto as Exhibit 4.

9

necessary, but for Plaintiff's dilatory and contumacious behavior.  Accordingly, Defendants respectfully request that Plaintiff be required to reimburse Defendants for the fees and costs incurred by making this Motion and the previous Motion to Compel.

## V.     CONCLUSION

For the foregoing reasons, and the reasons stated more fully in Defendants' Motion to Dismiss the Complaint Pursuant to Rule 37, Defendants respectfully request that this Court dismiss the Complaint with prejudice and award attorneys' fees and costs to prepare and file the Motion to Dismiss and the previous Motion to Compel.

Respectfully submitted,

Dated: 3/11/04                    /s/ Janelle E. Fulton (jef51)
David J. MacMain (PA Attorney ID 59320)
Janelle E. Fulton (PA Attorney ID 80027)
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 S. Broad Street
Philadelphia, PA  19109
(215) 772-1500

Attorneys for Defendants
City of Reading and
Reading Police Department

1009140v1

## **CERTIFICATION**

    I, Janelle E. Fulton, counsel for Defendants City of Reading and Reading Police Department hereby certify that I attempted to resolve the discovery dispute that is the subject of the attached Motion by conferring and corresponding with Plaintiff's counsel as set forth in Defendants' Motion to Compel and Motion to Dismiss the Complaint Pursuant to Rule 37, which were filed with the Court on January 15, 2004 and February 23, 2004 respectively.


Dated: 3/11/04                                                          /s/ Janelle E. Fulton (jef51)
                                       Janelle E. Fulton

1009140v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2004, I served a true and correct copy of the foregoing Reply Brief to Plaintiff's Response to Defendants' Motion to Dismiss the Complaint Pursuant to Rule 37 upon the following by first class United States mail, postage pre-paid:

> W. Thomas Anthony, Esquire
> 451 Main Street
> Bethlehem, PA  18018
> *Attorney for Plaintiff*

> /s/ Janelle E. Fulton (jef51)
> Janelle E. Fulton

1009140v1