**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **JASON ROMAN,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CIVIL ACTION** |
| | : | **NO.    02-4763** |
| **CITY OF READING and** | : | |
| **READING POLICE DEPARTMENT,** | : | |
| **Defendants** | : | |
| | : | |

**MEMORANDUM  OPINION  AND  ORDER**

**RUFE, J.**                                                                    **March 22, 2004**

This § 1983 action comes before the Court on Defendants' Motion to Dismiss Pursuant to Rule 37.  For the reasons below, Defendants' Motion is granted and the Complaint is dismissed with prejudice.

**I.      BACKGROUND**

The following is taken from the Complaint and evidence of record and is undisputed unless otherwise noted.  Plaintiff Jason Roman initiated this action pro se against Defendants the City of Reading and the Reading Police Department.  On June 14, 2002, at approximately 1:30 a.m., Plaintiff was driving through Reading, Pennsylvania when "a hail of bullets" struck his car.  Plaintiff sped away and, after driving two or three blocks, observed several police cars and pulled over to report the shooting.  Plaintiff exited his vehicle and entered a store where several police officers were investigating a burglary.  When Plaintiff, who is African-American, reported the shooting to a white police officer, the officer instructed him to wait in his car and that someone would be with him shortly.  Plaintiff returned to his car and waited for approximately 15 minutes, but no one came to speak with him.  Plaintiff then telephoned a friend and asked her to call 911 to report the shooting

and request police assistance. When no emergency response materialized, Plaintiff twice telephoned 911 and requested police assistance.

Plaintiff waited approximately forty-five minutes in his car. Two police officers present for the burglary investigation then approached him and listened to Plaintiff's report of the shooting incident. Plaintiff told the officers that he did not see anyone fire a weapon. The officers visually examined Plaintiff's vehicle but took no physical evidence. One of the officers told Plaintiff he was "lucky" that he had not been killed and that "there are a lot of shootings in that part of town." The other officer said, "the attackers were probably using the car for target practice." The encounter lasted approximately fifteen minutes and concluded with the officers giving Plaintiff their card and an incident number. The police performed no follow-up investigation.

Plaintiff filed his Complaint in the instant action on July 18, 2002. To summarize, Plaintiff alleges a substantive due process violation due to Defendants' failure to provide constitutionally sufficient protective services. In addition, he alleges that Defendants, pursuant to a policy or custom, treated him differently because of his race in violation of the Equal Protection Clause. Finally, Plaintiff alleges that Defendants' conduct places unreasonable restrictions on his constitutional right to travel. Plaintiff advances these claims, which are grounded in the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Jurisdiction is premised on 28 U.S.C. §§ 1331, 1343.

Today's decision is largely a product of its procedural history, so the Court will recite that history in some detail. Defendants filed a motion to dismiss on September 18, 2002. On October 29, 2002, over three weeks after expiration of the deadline for filing a response to Defendants' motion, Plaintiff sought a thirty-day extension of time in which to respond. Plaintiff

-2-

claimed that various health problems were impeding his ability to prepare a response and that he was attempting to retain counsel for assistance. Defendants advised the Court in a November 5, 2002 letter that they would not oppose Plaintiff's request. Accordingly, the Court extended Plaintiff's deadline to December 6, 2002.

When Plaintiff failed to file a response by December 13, 2002 - - one week after the extended deadline - - the Court granted Defendants' motion to dismiss as uncontested under Local Rule of Civil Procedure 7.1(c) and dismissed the Complaint with leave to file an Amended Complaint by January 2, 2003. Plaintiff failed to file an Amended Complaint within the time permitted.

On January 27, 2003, Plaintiff filed an opposition to Defendants' motion to dismiss, followed a few days later by an addendum thereto. On February 10, 2003, Defendants moved to strike Plaintiff's opposition and addendum. The Court granted Defendants' motion on February 13, 2003 because Plaintiff's opposition was moot, there being no pending motion to oppose.

On February 26, 2003, Plaintiff moved to vacate the Court's December 13, 2002 Order dismissing the Complaint. Plaintiff claimed that he had never received copies of the Order extending his response deadline to December 6, 2002 or the Order dismissing the Complaint, and that he filed his opposition to the motion to dismiss believing it was still pending. He filed his opposition to Defendants' motion to dismiss so late, he explained, due to continuing health problems.[1]

---

[1] Using the December 6, 2002 deadline established by the November 6, 2002 Order, Plaintiff filed his opposition over fifty days late. Accepting Plaintiff's contention that he never received the Court's November 6, 2002 Order extending the deadline, Plaintiff should have understood that the original filing deadline was still in effect, which would have been October 7, 2002. See Fed. R. Civ. P. 6(a), (e); Local R. 7.1(c) (permitting fourteen days in which to respond, plus three days for service by regular mail, and excluding Sunday, October 6, 2002 from the computation). Thus, using the October 7, 2002 deadline, Plaintiff filed his opposition over 110 days late.

At the time, according to the pleadings and the docket, Plaintiff's Allentown mailing address had not changed since he filed the Complaint.  By Plaintiff's own admission, he had received some Court filings at his Allentown mailing address.  Notwithstanding this curious set of circumstances, and mindful of its obligation to be somewhat lenient with pro se litigants, the Court accepted Plaintiff's explanation as a sufficient basis upon which to vacate its prior Order dismissing the Complaint.[2]  In an April 3, 2003 Order, the Court reinstated the Complaint and Defendants' motion to dismiss, vacated its Order striking Plaintiffs' pleadings in opposition to the motion to dismiss, and took Defendants' motion and Plaintiff's opposition papers under advisement.  As explained in a footnote to that Order, the Court fashioned this relief in order to facilitate the efficient administration of justice.[3]

On April 21, 2003, the Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss.[4]  The Court dismissed Plaintiff's substantive due process claim, but it denied the motion as to the equal protection and right to travel claims because Defendants' motion had failed to address them.  Although these claims were perhaps defective as well, the Court declined to "take up the yoke where defense counsel leaves off."[5]  Accordingly, the Court ordered Defendants to file their Answer and set an August 15, 2003 discovery deadline and a September 15, 2003 dispositive motions deadline.  Defendants filed a timely Answer.

---

[2] See Fed. R. Civ. P. 60(b)(1) (authorizing the Court to relieve a party from an order on basis of "mistake, inadvertence, surprise, or excusable neglect").

[3] See Fed. R. Civ. P. 1 (Federal Rules should be "administered to secure the just, speedy, and inexpensive determination of every action").

[4] See Roman v. City of Reading, 257 F. Supp. 2d 799 (E.D. Pa. 2003).

[5] Id. at 803 n.7.

The discovery period and the motions deadline came and went without any filings. Accordingly, on September 22, 2003, the Court ordered the parties to file a status update. Defendants responded in an October 3, 2003 letter to the Court, explaining that neither party had conducted any discovery and requesting additional time in which to do so. Plaintiff failed to respond to either the Court's Order or Defendants' letter. On October 22, 2003, the Court entered a Supplemental Scheduling Order directing Plaintiff and Defendants to file pretrial memoranda by March 9 and March 19, 2004, respectfully, and setting a March 25, 2004 pretrial conference and April 6, 2004 trial pool. The Court's Order did not address Defendants' request for an extension of discovery.

Around this time, Defendants took the initiative to engage Plaintiff in the discovery process. On October 10, 2003, Defendants served their First Set of Interrogatories Directed to Plaintiff, their First Request for Production of Documents and Things Directed to Plaintiff ("RFPs") and a Notice of Deposition for November 3, 2003. In addition, Defendants served their Rule 26(a)(1) initial disclosure statement and requested that Plaintiff reciprocate.

Plaintiff failed to respond to Defendants' Interrogatories and RFPs by the November 10, 2003 deadline.[6] Plaintiff also failed to appear for his November 3, 2003 deposition. He explained in a letter to defense counsel that he mistakenly believed that the deposition was scheduled for December 3, 2003 and that he was "confused lately as to [his] times and dates."[7] Plaintiff asked defense counsel to contact his newly retained attorney, W. Thomas Anthony, Jr., in order to reschedule the deposition, and Mr. Anthony confirmed this arrangement in a November 4,

---

[6] See Fed. R. Civ. P. 33(b)(3), 34(b) (setting thirty-day deadline for written responses to discovery).

[7] Letter of 11/3/03 from Roman to MacMain and White, attached to Defs.' Mot. to Dismiss at Ex. B.

2003 letter to defense counsel.

Defendants sent a November 11, 2003 letter to Mr. Anthony requesting Plaintiff's overdue discovery responses and enclosing a second notice of deposition for November 17, 2003. On Friday, November 14, 2003, Mr. Anthony notified defense counsel that he could not attend Plaintiff's deposition on Monday, November 17, 2003 but that he was available on December 3, 2003. Accordingly, Defendants served a third notice of deposition for December 3, 2003 and again requested Plaintiff's written responses to Interrogatories and RFPs and Plaintiff's Rule 26(a)(1) initial disclosures.[8]

Defendants deposed Plaintiff on December 3, 2003. Near the conclusion of the deposition, defense counsel reiterated her request that Plaintiff serve written responses to Defendants' Interrogatories and RFPs. Plaintiff and Mr. Anthony both denied ever receiving copies of Defendants' discovery requests.[9] Therefore, counsel for Defendants handed additional copies of Defendants' Interrogatories and RFPs to Mr. Anthony, who stated on the record and in Plaintiff's presence, "I will make sure he fills out that stuff and gets you the information."[10]

On December 30, 2003, Defendants followed up on Plaintiff's overdue discovery responses and initial disclosures and requested that Plaintiff complete HIPAA Compliant

---

[8] Letter of 11/17/03 from Fulton to Anthony, attached to Defs.'s Mot. to Dismiss at Ex. E.

[9] And yet, it is undisputed that Plaintiff received the notice of deposition for November 4, 2003, which was enclosed along with Defendants' Interrogatories and RPFs in the October 10, 2003 letter. Moreover, Mr. Anthony made this claim notwithstanding Defendants' November 11, 2003 letter enclosing additional copies of Defendants' discovery requests and reminding him that Plaintiff's discovery responses were overdue. Neither Plaintiff nor Mr. Anthony offer any alternative, credible explanation for these discrepancies beyond flat denials.

[10] Roman Dep. at 135:2-4.

Authorizations permitting access to his medical records.[11]  Plaintiff did not respond to this letter or provide any of the requested information.

On January 15, 2004, Defendants filed a motion for an extension of time in which to complete discovery and file dispositive motions and a motion to compel Plaintiff's discovery responses.  On January 21, 2004, the Court granted the motion for an extension but rejected Defendants' proposed deadlines so as to preserve the existing dates for the pretrial conference (March 25, 2004) and trial pool (April 6, 2004), which could not be rescheduled in light of the Court's busy docket.  The Court granted leave for discovery through February 13, 2004 and set a motions deadline of February 23, 2004.  The Court carefully chose these dates to ensure that it would have an adequate period of time in which to consider and decide any dispositive motions in advance of the March 25, 2004 pretrial conference.

Plaintiff failed to respond to Defendants' motion to compel within the time allowed under the Local Rules.  Accordingly, on February 3, 2004, the Court granted Defendants' motion as uncontested and ordered Plaintiff to serve all his discovery responses before the close of discovery.  The Court explicitly reiterated the discovery and motions deadlines and advised Plaintiff's counsel to "comply strictly with all relevant deadlines."  Nonetheless, counsel failed to comply with this Order.

On January 23, 2004, Defendants filed a motion for summary judgment and the

---

[11] Letter of 12/30/03 from Fulton to Anthony, attached to Defs.' Mot. to Dismiss at Ex. G.  Plaintiff testified at his deposition that the June 14, 2002 encounter with Reading Police caused him psychological injury, identified his mental health providers and signed blank HIPAA authorization forms permitting access to his medical records.  See Roman Dep. at 31-32, 111-113.  When Defendants presented these forms to Plaintiff's various mental health providers, some of the providers insisted on a different form.  Accordingly, on December 9, 2003, Defendants forwarded the appropriate HIPAA forms to Plaintiff for his signature.  See Letter of 12/9/03 from Binderman to Anthony, attached to Defs.' Mot. to Dismiss at Ex. H.  Therefore, in addition to addressing Plaintiff's overdue discovery responses, Defendants' December 30, 2003 letter followed up on the missing HIPAA forms.

instant motion seeking dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 37.

On March 8, 2004, Plaintiff filed with the Court (1) his Rule 26(a) initial disclosures, (2) an Answer

to RFPs, (3) Answers to Interrogatories, (4) a motion for extension of time in which to file his

opposition to Defendants' motion for summary judgment and his pretrial memorandum, (5) an

Answer and New Matter to Defendants' motion to dismiss, and (6) Mr. Anthony's entry of

appearance.

Accordingly, presently before the Court is Defendants' Motion to Dismiss and

Plaintiffs' Answer and New Matter thereto.  A thorough discussion of Defendants' motion follows.

## II.    DISCUSSION

Federal Rule of Civil Procedure 37 authorizes a district court to sanction a party for

failure to obey an order compelling disclosure or discovery, failure to make the requisite Rule 26(a)

initial disclosures, and failure to serve answers or objections to interrogatories or respond to a

request for inspection of documents.[12]  Among the many available sanctions is dismissal of the

action against the disobedient party,[13] but "the sanction of dismissal is disfavored absent the most

egregious circumstances," and any doubts should be resolved in favor of adjudication on the

merits.[14]

In determining whether the harsh sanction of dismissal is appropriate, the Court must

weigh the following six factors:

(1) the extent of the party's personal responsibility; (2) the prejudice to the
adversary caused by the failure to meet scheduling orders and respond to

---

[12] Fed. R. Civ. P. 37(b)(2), (c), (d).

[13] See id. at 37(b)(2)(C), (c)(1), (d).

[14] United States v. $8,221,877.16 in United States Currency, 330 F.3d 141, 161-62 (3d Cir. 2003).

discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternate sanctions; and (6) the meritoriousness of the claims or defenses.[15]

Although the Court must address each factor, "[e]ach factor need not be satisfied for the trial court to dismiss a claim."[16]  In addition to Plaintiff's general conduct in the course of this litigation, Defendants argue for dismissal based on three specific instances:  (1) Plaintiff's failure to serve timely answers to interrogatories and RFPs, (2) Plaintiff's failure to comply with this Court's February 3, 2004 Order, and (3) Plaintiff's failure to make timely Rule 26(a) initial disclosures.

### A.    Extent of Plaintiff's Personal Responsibility

Plaintiff's response to Defendants' motion repeats ad nauseam that any failures to provide timely discovery responses was the fault of Plaintiff's counsel and not Plaintiff himself.[17] The Court notes, however, that defense counsel addressed to Plaintiff himself the issue of Defendants' Interrogatories and RFPs at the conclusion of Plaintiff's deposition.   Although Plaintiff's counsel interjected and promised to provide responses, there can be little doubt that after this exchange Plaintiff himself was aware that his responses were overdue.  As such, even accepting Plaintiff's representation that he never received them - - a representation that is contradicted by correspondence in the record - - Plaintiff cannot avoid entirely the consequences of Mr. Anthony's

---

[15] Id. (quoting Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted)).

[16] Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003).

[17] Attorney Anthony proffers a host of banal excuses for his own missteps, none of which are particularly satisfying and all of which rank low on the scale of credibility given Defendants' persistent, months-long pursuit of those items named in the Court's February 3, 2004 Order.  Sadly, Attorney Anthony simultaneously "failed to note the actual date that appeared" in the Court's Order,  "confused the deadline date in this case with a deadline in another case," and "became busy with other cases, including several other matters for the Plaintiff."  Pl.'s Mem. of Law in Opp. to Mot. to Dismiss Compl. at 5.

negligence in these circumstances.[18]  This factor weighs in favor of dismissal, although because counsel bears some responsibility as well, only slightly.

**B.    Prejudice to Defendants Caused by Plaintiff's Failure to Meet Scheduling Orders and Respond to Discovery**

Defendants contend that they are prejudiced by Plaintiff's failures to respond to discovery requests or comply with this Court's orders and deadlines.  The Court agrees.  Plaintiff's failure to provide timely discovery responses has hampered Defendants' ability to defend themselves against Plaintiff's very serious allegations.  Perhaps prompted by the Court's October 22, 2003 Supplemental Scheduling Order, Defendants served their Interrogatories, RFPs and Rule 26(a) initial disclosures in an effort to jump-start the discovery process and begin preparing for trial in April 2004.  Despite Defendants' numerous good faith efforts to obtain responses, Plaintiff failed to meet his discovery obligations.  In an effort to avoid being prejudiced, Defendants utilized an available discovery tool - - a motion to compel - - and received a Court Order directing Plaintiff to respond.  Plaintiff ignored (or, if Mr. Anthony's story is to be believed, misread) this Order and failed to provide timely responses in the face of looming deadlines for dispositive motions, pretrial memoranda, a pretrial conference and a trial pool.  Finally, twenty months after initiating this action, two and one-half weeks before the final pretrial conference and four weeks before entering the trial pool, Plaintiff filed and served his discovery responses and Rule 26(a) initial disclosures.  To make matters worse, these late filings declare themselves incomplete and promise additional supplements.[19]  These late and incomplete discovery responses impede Defendants' ability to

---

[18] See Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) ("a client cannot always avoid the consequences of the acts or omissions of its counsel").

[19] See Pl.'s Answers to First Set of Interrogs. ¶¶ 10-12 [Doc. # 28] ("The Plaintiff has not completed the preparation of his case, and does not yet have all of his evidence available.  As the Plaintiff acquires additional

prepare effectively for the impending trial and create undeniable prejudice to Defendants.[20]

      The Court will not endeavor to catalogue every way that Plaintiff has burdened Defendants' efforts to build a legal and strategic defense; two examples should suffice.  First, when asked to identify the evidentiary basis for his claim that Defendants have a "policy of racial inequality," Plaintiff cited his own belief that were he a white man, he would have been treated differently by the Reading Police.[21]  In his deposition testimony and answers to Defendants' Interrogatories, Plaintiff supported his own belief with nonspecific references to articles in a local newspaper that he believed documented minorities' unequal treatment at the hands of Reading Police.  He also said he would "go to different police departments and get what their regulations are with respect to a shooting and with respect to a victim in a shooting, but if we go to trial I will be prepared with that information."[22]

      To date, with discovery closed, the motions deadline passed and trial set to begin potentially in less than three weeks, Plaintiff has produced none of this evidence.  Setting aside its admissibility or relevance, if Plaintiff actually did present such evidence at trial, Defendants would have no advance opportunity to probe it or develop counter-evidence.

      Second, Plaintiff states in a March 8, 2003 filing that he intends to offer as evidence a "report" from Dr. David O. Daley.  However, he explains, "the doctor's busy schedule and other

---

evidence on this issue, he will supplement his answer to this interrogatory.).

[20] See Ware, 322 F.3d at 222 (sufficient prejudice includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy").

[21] See Roman Dep. at 128-29.

[22] Id. at 127-28.

surrounding circumstances" have thus far rendered production of such a report infeasible.[23] Notwithstanding the fast-approaching pretrial conference and trial pool dates, Plaintiff states that Dr. Daley will want to examine Plaintiff again prior to producing his final report.

Plaintiff's request for further delay is preposterous and plainly prejudicial. Discovery is closed and trial is mere weeks away. He offers no explanation for why he could not have obtained such a report from Dr. Daley - - who by December 2003 had been treating Plaintiff for "almost a year"[24] - - well in advance of trial so that Defendants could test it or produce counter-evidence. Even if discovery were still open at this late stage, Plaintiff offers no assurance that such examination would take place in advance of trial or that Defendants would have a meaningful opportunity to review it in advance of trial. Further complicating matters is Plaintiff's statement that, in addition to being a fact witness, Dr. Daley "is a possible expert witness."[25] Yet, Plaintiff has complied with none of the Federal Rules governing expert witnesses,[26] and fails even to describe in the most general terms the subject of Dr. Daley's proffered testimony. Plaintiff's tactics obviously prejudice Defendants' efforts to prepare for trial, which is scheduled to begin in a matter of weeks.

Plaintiff avers that Defendants are not prejudiced by his failure to provide timely responses to their discovery requests because he provided adequate factual information at his deposition. This argument is without merit. Plaintiff cannot merely direct Defendants to his

---

[23] Pl.'s Mot. for Extension of Time at ¶¶ 3-4.

[24] Roman Dep. at 31.

[25] Pl.'s Rule 26(a) Initial Disclosures ¶ 5.

[26] See, e.g., Fed. R. Civ. P. 26(a)(2) (governing disclosure of testifying expert witnesses and production of expert reports, which must occur at least 90 days prior to trial).

-12-

deposition testimony in lieu of providing adequate responses to written discovery.[27]

          This factor weighs heavily in favor of dismissal.

### C.    Plaintiff's History of Dilatoriness

          Plaintiff has injected delay into this litigation at nearly every turn.  First, despite filing his Complaint on July 18, 2002, he waited until March 8, 2004 - - nearly twenty months later - - before filing his Rule 26(a)(1) initial disclosures.  When Defendants filed a motion to dismiss, Plaintiff requested and received an extension of time in which to respond, but failed to meet that deadline.  Over two months later, Plaintiff asked the Court to revive his lawsuit, offering a questionable excuse for missing prior deadlines.  Mindful of its duty to be solicitous toward pro se litigants, the Court vacated its order of dismissal and later denied in part Defendants' motion to dismiss so that Plaintiff would have an opportunity to develop evidence in support of his claims.  Plaintiff then let a four-month discovery period pass without conducting any discovery whatsoever.  Plaintiff then failed to comply with the Court's Order requiring a status update.  Soon after this, Plaintiff twice failed to attend a properly noticed deposition, forcing another month's delay into these languishing proceedings.  Plaintiff failed to respond to Defendants' written discovery within the time provided under the Federal Rules, and he failed to provide HIPAA authorization forms as promised, both failures requiring Court intervention.  Plaintiff failed to respond to Defendants' motion to compel and failed to provide discovery responses within the Court-ordered discovery period.  Most recently, Plaintiff failed to file a timely response to Defendants' motion for summary judgment or a timely pretrial memorandum (due March 9, 2004), insisting he needed yet more time

---

[27] Cf. Dipietro v. Jefferson Bank, 144 F.R.D. 279, 282 (E.D. Pa. 1992) ("The general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions, or other documents.") (citing 4 J. Moore et al., Moore's Federal Practice ¶ 33.25[1] (2d ed. 1989)).

to gather evidence.  And, with a trial pool date approaching, Plaintiff states openly that he is not finished with his own discovery and requests an extension of time.

Plaintiff's history of dilatoriness is long, bedeviling and inconsistent with the efficient administration of justice.  This factor weighs heavily in favor of dismissal.

### D.    Whether Plaintiff's or Mr. Anthony's Conduct was Willful or in Bad Faith

The sheer quantity of Plaintiff's dilatory conduct, disregard for the Federal Rules of Civil Procedure and Court orders, and failure to cooperate in discovery suggests that both Plaintiff and his attorney have acted in bad faith.  Most telling is their failure to offer any substantiated, adequate excuses for their shortcomings.  Plaintiff offers no explanation whatsoever for failing to comply with the Court's September 22, 2003 Order requiring a status update.  Plaintiff's excuse for failing to comply with the Court's February 3, 2004 Order - - plain inadvertence - - is flaccid at best, especially following on the heels of Plaintiff's excessive procrastination in the face of Defendants' pecking and carping.[28]    Neither Plaintiff, when proceeding pro se, nor his retained attorney thereafter, conducted any discovery; this is hardly evidence of good faith efforts to advance claims for which Plaintiff bears the burden at trial.  Moreover, Plaintiff failed to file a timely response to the motion to dismiss, the motion to compel or the motion for summary judgment.  Although the Court credits Plaintiff's March 8, 2004 filings as an effort to both comply with the Court's February 3, 2004 Order and his discovery obligations, the Court cannot ignore Plaintiff's repeated failures to

---

[28] The Court is also left to wonder whether Plaintiff and his attorney have engaged in some kind of gamesmanship from the outset of this litigation in the hopes of advancing this lawsuit as a pro se action, which sometimes are permitted to develop under a more indulgent standard of judicial review.  Although Mr. Anthony did not enter his appearance until March 8, 2004, the Court notes that Mr. Anthony's signature appears on the summons (dated July 31, 2002) as the server of process.  Moreover, in this Court's experience, most pro se pleadings are inartfully drafted.  Although Plaintiff testified that he advanced no further in school than the ninth grade, see Roman Dep. at 25, Plaintiff's pleadings are relatively sophisticated; so much so that the Court detects an attorney's guiding hand.  Although these open questions do not in themselves constitute bad faith, they tend to cast a general pallor of doubt over Plaintiff's bald, unadorned claims of **good** faith.

comply with Court Orders and to provide timely responses to Defendants' discovery requests and motions.[29]  This factor favors dismissal.

     **E.**     **Effectiveness of Alternative Sanctions**

     There are several alternatives available to the Court in lieu of dismissal, but none will satisfactorily redress the harm already caused by Plaintiff and his attorney.  The Court might preclude Plaintiff from presenting certain evidence at trial, but given that the record reveals little or no evidence available that supports his claims, the Court would be hard-pressed to craft an effective order in this regard.  Additionally, limiting Plaintiff's evidence would do little to cure Defendants' need for an outline of Plaintiff's evidentiary case, which is severely lacking given Plaintiff's late and sketchy discovery responses.  Forbidding Plaintiff from conducting further discovery would be tantamount to dismissal because he has conducted no discovery of his own.[30]

     The Court might assess attorneys' fees and costs against Plaintiff or his attorney, but this would also fail to redress the fact that Defendants are severely hampered in preparing their defense for trial.  It would also fail to address the needless consumption of judicial resources in entertaining claims that lack evidentiary support.

     The Court might grant Plaintiff's motion for an extension of time and continue the trial date in order to permit Defendants an opportunity to obtain discovery and mount an adequate defense.  Again, this would inject further delay into an already-languishing case and require

---

[29] See Wade v. Wooten, No. Civ.A.90-2373, 1993 WL 298715, at *4 (E.D. Pa. July 30, 1993) (finding bad faith factor weighs in favor of dismissal due to the plaintiff's "failure to pursue his claim beyond the mere pleadings despite being given ample opportunity to comply with this Court's Orders and to respond to defendants' motions").

[30] Cf. Lesser v. Aseron, Civ. A. Nos. 96-8121 & 97-6070, 1999 U.S. Dist. LEXIS 113, at *7 (E.D. Pa. Jan.11, 1999) ("If this Court were to preclude the Plaintiffs from presenting any medical evidence and from contesting any claim, testimony, or documentation presented by Aseron regarding Plaintiff's medical condition, the trial would be entirely pointless.").

additional expenditure of the Court's and Defendants' resources. The Court is ever-mindful of its obligation to the public to provide an efficient forum for resolution of civil disputes and criminal prosecutions. As such, it must actively manage and enforce existing deadlines. This case has already suffered from significant delay, and no further extensions of time are warranted or possible given the Court's busy docket.[31]

Lastly, the Court might decide this case on Defendants' motion for summary judgment.[32] Under the familiar summary judgment standard, the Court would examine the evidence in a view toward discerning genuine issues of material fact. Yet, Plaintiff contends that the record is incomplete at this late stage and asks for additional time to marshal his evidence, which would introduce unwarranted delay and a waste of judicial resources. The Court is hesitant to render summary judgment on an incomplete record. This is especially true where, as here, the Complaint is at least partially defective and, even if it were not, Plaintiff has conducted no discovery thus far.

There being no satisfactory alternative sanction available, this factor favors dismissal.

### F.    Merit of Plaintiff's Claims

The merit of Plaintiff's claims is not judged under the summary judgment standard. Rather, "[a] claim . . . will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff."[33]

This Court previously held that Plaintiff stated a claim under the Equal Protection

---

[31] See Mindek v. Rigatti, 964 F.2d 1369, 1375 (3d Cir. 1992) ("It is the district court judge who must strive to manage his or her calendar efficiently and, in so doing, may find it necessary to dismiss a litigant's complaint as a sanction for repeated failure to satisfy court orders.").

[32] See, e.g., Wade, 1993 WL 298715, at *4 (declining to dismiss an action in favor of adjudication pursuant to a motion for summary judgment).

[33] Poulis, 747 F.2d at 869-70.

Clause when he alleged that Defendants, pursuant to a policy of racial discrimination, denied him protective services based on his race and treated him differently than they would have a person of a different race.[34]  Taking this bald allegation in a vacuum, if established at trial, Plaintiff would prevail.  Defendants offer no argument to the contrary, relying instead on the many, many gaping holes in Plaintiff's evidence.  Thus, viewing Plaintiff's Equal Protection claim with donnish objectivity and in a vacuum, it is meritorious.[35]

Plaintiff's right to intrastate travel claim, however, lacks merit.  He alleges that Defendants' failure to protect visitors to the City of Reading from the hazards of crime restrict Plaintiff's freedom to travel.[36]  Although courts have recognized that some *affirmative* government regulation contravenes the right to travel,[37] no court has recognized government *inaction* as the basis for such a claim.  Indeed, the Supreme Court has held that a "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[38]  Given that the constitutional right to intrastate travel flows from the Due Process Clause,[39] Defendants' alleged failure to protect Plaintiff from shootings such as what occurred on June 14, 2002 cannot, consistent with Supreme Court precedent, form the basis for a constitutional violation.  Accordingly, this claim

---

[34] Roman, 257 F. Supp. 2d at 803 (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.")).

[35] And yet, despite the Court's best efforts to limit its scrutiny to whether Plaintiff's plain allegations state a legal claim, Plaintiff's failure to conduct any discovery whatsoever in support of his claims - - even with trial mere weeks away - - renders this analysis frustratingly academic and divorced from reality.

[36] See Complaint ¶ 31.

[37] See, e.g., Callaway v. Samson, 193 F. Supp. 2d 783 (D.N.J. 2002) (invalidating as applied a one-year residency requirement for candidates for local office).

[38] DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).

[39] Lutz v. City of York, 899 F.2d 255 (3d Cir. 1990).

lacks merit.

    This factor favors dismissal.

*  *  *  *  *  *

    As outlined above, all of the <u>Poulis</u> factors weigh in favor of dismissal.  Accordingly, the Court determines that the harsh sanction of dismissal is appropriate, and the Complaint is dismissed with prejudice.

## III. DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS

    Defendants ask this Court to order Plaintiff to reimburse them for attorneys' fees and costs incurred in connection with Plaintiff's refusal to cooperate with discovery.  The Federal Rules authorize such a sanction, although an award of costs and fees lies in the discretion of the Court.[40]

    Having imposed upon Plaintiff the harshest of sanctions - - dismissal of his Complaint - - the Court is loathe to add insult to injury.  Moreover, the Court notes that Defendants' conduct in this litigation has not always been exemplary.  Its motion to dismiss failed to address two of Plaintiff's claims, both of which could have been discerned upon a reasonably careful reading of the Complaint, thus permitting the case to proceed beyond the pleadings stage without challenge. Moreover, Defendants were somewhat dilatory in litigating this case insofar as they failed to serve their Rule 26(a) initial disclosures within the initial discovery period and failed to otherwise engage Plaintiff in the litigation process until prompted by the Court's October 22, 2003 Order for a status update.  Because Defendants bear some responsibility for permitting this questionable action to proceed and eventually stagnate, an imposition of additional sanctions would not be just or

---

[40] Fed. R. Civ. P. 37(b)(2), (c), (d).  Subsection (c) states that the Court "may" impose appropriate sanctions.  Subsections (b)(2) and (d) state that the Court "shall" impose sanctions "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  As such, the Court may forego such sanctions in appropriate circumstances.

-18-

appropriate.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **JASON ROMAN,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CIVIL ACTION** |
| | : | **NO.   02-4763** |
| **CITY OF READING and** | : | |
| **READING POLICE DEPARTMENT,** | : | |
| **Defendants** | : | |
| | : | |

## ORDER

**AND NOW**, this 22nd day of March, 2004, upon consideration of Defendants' Motion to Dismiss the Complaint Pursuant to Rule 37 [Doc. # 25], Plaintiff's Memorandum of Law in Opposition thereto [Doc. # 30], Defendants' Reply [Doc. # 34], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants' Motion is **GRANTED**.  It is further **ORDERED** that the Complaint [Doc. # 1] is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 24] and Plaintiff's Motion for Extension of Time [Doc. # 29] are **DENIED AS MOOT**.

The Clerk of Court shall mark this case closed for statistical purposes.

It is so **ORDERED**.

BY THE COURT:

_____

**CYNTHIA M. RUFE, J.**